CALHOUN v AUTO CLUB INSURANCE ASSOCIATION

Docket No. 99691. Submitted February 22, 1989, at Detroit. Decided May 15, 1989. Leave to appeal applied for.

Daniel Calhoun was injured in an automobile accident on March 3, 1984. At the time, he had no-fault insurance through Auto Club Insurance Association and belonged to a health maintenance organization insurance plan which would pay for any medical treatment received by Calhoun at the Woodland Medical Clinic, but would not pay for medical treatment received anywhere else. The no-fault policy contained a coordination of benefits clause stating that any no-fault benefits paid or payable to Calhoun would be reduced by any amount paid or payable under any other insurance or law. Calhoun received treatment at the Woodland Clinic, which was covered under Calhoun's HMO plan. He also received treatment from other sources, which Auto Club paid for until November, 1985, when, following a physician's examination requested by Auto Club, it discontinued providing medical benefits to Calhoun. Calhoun filed suit against Auto Club in district court for payment of benefits. Auto Club moved for summary disposition, arguing that pursuant to the coordination of benefits clause contained in the no-fault policy Calhoun had a duty to pursue medical treatment from his own provider and Auto Club owed no duty to reimburse Calhoun for medical treatment not covered by his HMO plan. The district court granted summary disposition in favor of Auto Club. Calhoun appealed to the Wayne Circuit Court, which reversed and remanded the case for further proceedings, Roland L. Olzark, J. Auto Club appealed by leave granted.

The Court of Appeals *held:*

1. The fact that Auto Club paid no-fault benefits for approximately 1½ years and Calhoun relied on Auto Club to pay those

REFERENCES

Am Jur 2d, Automobile Insurance § 368; Insurance §§ 283 *et seq.*, 1664, 1665.

Combining or "stacking" medical payment provisions of automobile liability policy or policies issued by one or more insurers to one insured. 29 ALR4th 49.

benefits does not estop Auto Club from asserting that it owes Calhoun no duty to pay those benefits.

2. Calhoun was not required by the no-fault policy to seek all possible treatment from physicians included in his HMO before he could receive no-fault insurance benefits for medical care not covered by his HMO.

3. Allowing Calhoun to claim medical benefits under his no-fault policy without first seeking all possible treatment from his HMO does not defeat the legislative purpose of reducing duplicative coverage, insurance premiums, and the rising prices of health care and insurance by making an insured party's other health coverage primary.

Affirmed.

1. INSURANCE — PAYMENT OF BENEFITS — DENIAL OF LIABILITY.

The fact that an insurer has paid some benefits to an insured party does not preclude the insurer from later asserting that it owes nothing when the insured party files suit.

2. INSURANCE — NO-FAULT — COORDINATION OF BENEFITS — HEALTH MAINTENANCE ORGANIZATIONS.

Coverage under a health maintenance organization insurance plan is considered health and accident coverage under the no-fault act, and when an HMO member chooses to have coordination of benefits under a no-fault policy, the HMO is considered the primary medical insurer.

3. INSURANCE — LIMITATIONS — EXCLUSIONS — AMBIGUITIES.

Any limitations or exclusions of coverage must be clearly expressed in the language of an insurance policy; any ambiguities are liberally construed in favor of the insured party.

4. INSURANCE — NO-FAULT — COORDINATION OF BENEFITS — HEALTH MAINTENANCE ORGANIZATIONS.

A member of a health maintenance organization who is injured in an automobile accident may not be· required to seek all possible treatment from physicians included in his HMO before being entitled to no-fault insurance benefits for medical care not covered by his HMO where the coordination of benefits clause in the no-fault policy states that medical benefits paid or payable to the insured shall be reduced by any amount paid or payable under the insured's other medical coverage and the insured's HMO covers only medical treatment at a specific clinic; any treatment not covered by the HMO plan is not paid or payable under the plan and the insured is entitled to no-fault coverage for such treatment.

5. INSURANCE — NO-FAULT — BENEFITS PROVIDED OR REQUIRED TO BE
    PROVIDED BY LAW.
    The no-fault act requires that an insured party seek all benefits
    provided or required to be provided by law prior to seeking
    additional no-fault benefits in excess of coverage provided (MCL
    500.3109[1]; MSA 24.13109[1]).

*Gursten, Wigod, Koltonow & Falzon, P.C.* (by *Kevin A. McNeely*), for plaintiff.

*Brandt, Hanlon, Becker, Lanctot, McCutcheon, Martin & Schoolmaster* (by *Louis W. Andraski*), and *Nancy L. Bosh,* of Counsel, for defendant.

Amicus Curiae:

*Anderson, Hay & Wonch, P.C.* (by *Thomas H. Hay*), for Michigan Trial Lawyers Association.

Before: MICHAEL J. KELLY, P.J., and DOCTOROFF and CAVANAGH, JJ.

MICHAEL J KELLY, P.J. Defendant Auto Club Insurance Association appeals from a circuit court order reversing the district court grant of summary disposition in defendant's favor.

Plaintiff Daniel Calhoun was injured in a car accident on March 3, 1984. At the time of the accident, plaintiff was insured by a no-fault insurance policy from defendant. This policy contained the following provision for coordination of medical benefits:

> If the Declaration Certificate shows Coordinated Medical Benefits, sums paid or payable to or for you or any relative shall be reduced by any amount paid or payable under any valid and collectible: individual, blanket or group disability or hospitalization insurance; medical, surgical or hospital direct pay or reimbursement health care plan; Workers' Compensation Law, disability law

of a similar nature, or any other state or federal law; or car or premises insurance affording medical expense benefits.

At the same time he was insured by defendant, plaintiff belonged to a health maintenance organization insurance plan named Independence Health Plan. Plaintiff's Independence Health Plan would pay for any medical treatment received by plaintiff at the Woodland Medical Clinic, but did not cover medical treatment received elsewhere.

Following his accident, plaintiff received treatment at the Woodland Medical Clinic, which was covered by his HMO plan. Afterwards, plaintiff sought and received medical treatment from other physicians who were not connected with the Woodland Medical Clinic. Defendant paid for these medical expenses, which were not covered by plaintiff's HMO, until November of 1985. In November of 1985, plaintiff was examined by another physician at defendant's request. As a result of this examination, defendant decided to discontinue providing medical benefits to plaintiff.

Plaintiff filed suit against defendant in district court for payment of medical benefits. Defendant moved for summary disposition, arguing that, pursuant to the coordination of benefits clause contained in the ACIA automobile insurance policy, plaintiff had a duty to pursue medical treatment from his own provider, so defendant owed no duty to reimburse plaintiff for other medical treatment not covered by his HMO plan. The district court granted summary disposition to defendant. Plaintiff appealed the district court's order to the circuit court, which reversed the district court's grant of summary disposition and remanded the case for further proceedings. Defendant now appeals from the circuit court's decision by leave granted.

I

The first issue we address on this appeal is plaintiff's argument that defendant is estopped from denying payment of plaintiff's no-fault medical benefits. Plaintiff argues that, since defendant paid those benefits for around 1½ years and plaintiff relied on that conduct, equitable estoppel bars defendant from asserting that it owes plaintiff no duty to pay those benefits. We disagree.

The fact that an insurer has paid some benefits to an insured party does not preclude it from later asserting that it owes nothing when the insured party files suit. *Hammermeister v Riverside Ins Co,* 116 Mich App 552, 556; 323 NW2d 480 (1982), modified 419 Mich 872 (1984). In *Hammermeister,* the Court recognized that an insurer could rationally decide to pay benefits on a suspect claim rather than undergo the greater cost of litigating; payment of benefits for such claims does not bar an insurer from later claiming that payment was not owed. *Id.,* p 556. Defendant is not estopped from arguing that it is not obligated to pay plaintiff medical benefits under its contract of no-fault insurance.

II

The next issue we address is whether plaintiff was required to seek all possible treatment from physicians included in his HMO before he could receive no-fault insurance benefits for medical care not covered by his HMO. Defendant argues that it would violate contract principles to allow an insured who pays a reduced premium in exchange for coordinated benefits coverage to choose medical treatment not covered under his primary medical coverage and that this essentially negates the

purpose of the coordinated benefits clause. We disagree.

No-fault insurers are required by statute to offer policies including coordination of benefits clauses, such as the one at issue here. Section 3109a of the no-fault act provides:

> An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household. [MCL 500.3109a; MSA 24.13109(1).]

Coverage under an HMO is considered health and accident coverage under this statute. *United States Fidelity & Guaranty Co v Group Health Plan of Southeast Michigan,* 131 Mich App 268, 272-273; 345 NW2d 683 (1983). When an HMO member chooses to have coordination of benefits under a no-fault policy, then the HMO is considered the primary medical insurer. *West Michigan Health Care Network v Transamerica Ins Corp of America,* 167 Mich App 218, 224; 421 NW2d 638 (1988); *United States Fidelity & Guaranty Co, supra.*

Although plaintiff's HMO was considered the primary health insurer, plaintiff's failure to seek all possible health care through his HMO does not preclude him from seeking recovery from defendant for medical expenses not covered by his HMO. Any ambiguities in the language of an insurance contract are liberally construed in favor of the insured party. *United States Fidelity & Guaranty*

*Co, supra,* p 274. Any limitations or exclusions of coverage must be clearly expressed in the language of the policy. *Id.* The no-fault insurance contract, drafted by defendant, stated that medical benefits paid or payable to plaintiff "shall be reduced by any amount paid or payable" under plaintiff's other medical coverage. Plaintiff's HMO covered only medical treatment received at a specific clinic; any other treatment was not covered by his plan and was not paid or payable under the plan. Thus, the treatment plaintiff received was not excluded by the coordination of benefits clause in his no-fault insurance policy. Had defendant intended that plaintiff seek all possible health care benefits from his HMO plan prior to making a claim for benefits under his no-fault policy, defendant should have included specific language to that effect in its coordination of benefits clause.

Defendant claims that plaintiff has effectively withheld the bargained-for consideration by failing to receive all possible benefits from his HMO. Defendant essentially argues that it will be forced to offer something for nothing if plaintiff is allowed to pay a reduced premium for coordinated benefits but is not required to first seek payment of benefits under the alternate insurance coverage. We disagree. The statutory language of § 3109a provides that insurers are required to offer coordinated personal protection insurance benefits at reduced rates, but also provides that the reduction in price should be "reasonably related to other health and accident coverage on the insured." In short, the statute provides that the premium charged should correspond to the risk insured against. Under this language, defendant could have tailored its reduced premium to match the extent of plaintiff's limited coverage; plaintiff should not be penalized if defendant fails to do so.

III

Defendant next argues that allowing plaintiff to claim medical benefits under his no-fault policy without first seeking all possible treatment from his HMO would defeat the legislative purpose behind § 3109a.

As previously noted, § 3109a requires no-fault insurers to offer coordinated benefits at a reduced premium. Section 3109a serves two basic legislative purposes. The primary purpose of § 3109a is to reduce duplicative coverage and thus reduce insurance premiums. Section 3109a was also designed to help reduce the rising prices of health care and insurance by making an insured party's other health coverage primary. *Federal Kemper Ins Co, Inc v Health Ins Admin, Inc,* 424 Mich 537, 546; 383 NW2d 590 (1986); *LeBlanc v State Farm Mut Auto Ins Co,* 410 Mich 173, 194-197; 301 NW2d 775 (1981).

Allowing plaintiff to claim medical benefits under his no-fault insurance does not defeat the legislative purposes behind § 3109a. Plaintiff cannot recover the medical expenses in question from his HMO, so no duplicative coverage or recovery is involved. Since plaintiff did have some medical treatment and expenses caused by the accident provided for under his HMO, the purpose of lowering health care costs was also served. Where there is no duplicative coverage, as in the instant case, the only means to further lower health care costs would be to eliminate the sole medical coverage to the insured. This would be contrary to the overall objective of the no-fault act, which is to provide assured, adequate, and prompt recovery. *Perez v State Farm Auto Ins Co,* 418 Mich 634, 648; 344 NW2d 773 (1984). Plaintiff in this case, though covered by both no-fault insurance and an HMO, is

now in danger of having no coverage for the medical expenses in question. Plaintiff's no-fault insurance policy, issued by defendant, purports to pay for costs in excess of those covered by plaintiff's primary health insurance. Here plaintiff has incurred medical expenses which are not covered by his primary health insurance, so these should be covered by his no-fault insurance policy. See *Perez, supra,* p 648.

IV

Finally, defendant argues that § 3109a is analogous to § 3109 of the no-fault act, and should be interpreted accordingly. Subsection 1 of § 3109 provides:

(1) Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury. [MCL 500.3109; MSA 24.13109.]

The primary purpose behind § 3109, like the purpose behind § 3109a, is to reduce duplicative benefits and insurance costs. *LeBlanc, supra,* p 191. Under § 3109(1), the insured party is obligated to seek all benefits "provided or required to be provided" by law prior to seeking additional no-fault benefits in excess of coverage provided. *Perez, supra,* p 645; *Morgan v Evans,* 163 Mich App 115, 118-119; 413 NW2d 747 (1987), lv gtd 430 Mich 858 (1988). This interpretation was based upon the mandatory language of § 3109, which requires that benefits "provided or required to be provided" by law "shall be subtracted" from no-fault benefits. *Perez, supra,* p 645.

Defendant claims that § 3109a should be interpreted in the same manner as § 3109, so as to

require plaintiff to seek all possible medical treatment from his HMO before seeking recovery of no-fault benefits. We decline to do so. As noted above, the interpretation advocated by defendant was based upon the mandatory language contained in § 3109(1). Since § 3109a does not contain similar straightforward mandatory language, we decline to impose analogous restrictions upon plaintiff's recovery of no-fault medical benefits.

Affirmed.