TOUSIGNANT v ALLSTATE INSURANCE COMPANY

Docket No. 93773. Argued April 2, 1993 (Calendar No. 12). Decided September 29, 1993.

Louise Ann Tousignant brought an action in the 46th Judicial District Court against the Allstate Insurance Company, her no-fault insurer, seeking reimbursement for medical expenses incurred for injuries received in an automobile accident. Allstate, relying on a coordination of benefits provision in its policy had refused to pay bills not submitted through the plaintiff's employer-provided health care insurance, Health Alliance Plan, a health maintenance organization. The case was transferred to the Oakland Circuit Court, Robert L. Templin, J., which granted summary disposition for Allstate. The Court of Appeals, MICHAEL J. KELLY and MARILYN J. KELLY, JJ. (WEAVER, P.J., dissenting), reversed (Docket No. 122987). Allstate appeals.

In an opinion by Justice LEVIN, joined by Chief Justice CAVANAGH, and Justices GRIFFIN and MALLETT, the Supreme Court held:

A no-fault insurer is not subject to liability for medical expense that an insured's coordinated health care insurer is required by contract to pay for or provide.

1. Where, as in this case, no-fault and health care coverages are coordinated and, as in this case, the health care insurer also is a health care provider, and a no-fault insured obtains medical care for injuries sustained in an automobile accident from or through the health care insurer, the legislative purpose underlying MCL 500.3109a; MSA 24.13109(1) of avoiding duplicative payment is achieved because the no-fault insurer is relieved of liability for payment. That purpose requires an insured who chooses to coordinate benefits to obtain payment and services from the health care insurer to the extent of the health care coverage available.

2. Coordination of benefits is optional, with resultant lower

REFERENCES

Am Jur 2d, Automobile Insurance §§ 368, 444.

Subrogation rights of insurer under medical payments provision of automobile insurance policy. 19 ALR3d 1054.

premiums. When elected, health insurance provides the primary coverage. Where the coordinated health care coverage chosen is provided by an employer through a health maintenance organization, a no-fault insured will be limited in the choice of physicians and facilities to those provided by the HMO. Section 3109a does not require that a no-fault insured be afforded a wide choice of physicians or facilities. In choosing coordination with an HMO, the no-fault insured agrees to relinquish the choice of physicians and facilities.

3. Allstate's no-fault policy provides that only those expenses that the health care insurer is not obligated to pay for or provide will be paid by it, and is a fair construction of the meaning of primary coverage under § 3109a as construed in case law. Where, as in this case, there is no claim that the health care insurer would not or could not provide the necessary medical treatment, there is no basis for a finding that health care benefits were not available from the health care insurer.

Reversed.

Justice BOYLE, joined by Justices BRICKLEY and RILEY, concurring in part and dissenting in part, stated that where an insured has opted to coordinate coverage pursuant to § 3109a, the insured has contractually agreed first to seek benefits under preexisting health and accident coverage. Under the clear language of the policy, Allstate is not liable to pay medical expense benefits that should have been paid for or provided by another source.

193 Mich App 415; 484 NW2d 404 (1992) reversed.

INSURANCE — NO-FAULT — HEALTH CARE — COORDINATION OF BENEFITS.

A no-fault insurer is not subject to liability for medical expense that an insured's coordinated health care insurer is required by contract to pay for or provide (MCL 500.3107, 500.3109a; MSA 24.13107, 24.13109[1]).

*Louis Gordon, P.C.* (by *David W. Martin*), for the plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *James L. Borin* and *Daniel S. Saylor*), for the defendant.

Amici Curiae:

*John A. Lydick* for the Michigan Association of Insurance Companies.

*Nancy L. Bosh* for Auto Club Insurance Association.

*Hay & O'Rourke, P.C.* (by *Thomas H. Hay*), *Monica Farris Linkner,* and *Charles P. Burbach,* for the Michigan Trial Lawyers Association.

LEVIN, J. The question presented concerns the liability of a no-fault automobile insurer when the insured purchases a policy of no-fault automobile insurance coordinated with other health coverage. We hold that a no-fault insurer is not subject to liability for medical expense that the insured's[1] health care insurer is required, under its contract, to pay for or provide.[2]

I

Louise Ann Tousignant was injured in an automobile accident in July, 1987. Tousignant's auto-

[1] Where the insured coordinates no-fault automobile insurance with other health coverage, coordination applies to benefits payable to the insured, the spouse of the insured, and any relative of either domiciled in the same household, as set forth in § 3109a of the no-fault automobile liability act:

> An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household. [MCL 500.3109a; MSA 24.13109(1).]

[2] We do not address the issues that might arise were a health insurer to fail to pay or reimburse an insured for the expense or, in the case of a health insurer who is also a provider, fail to provide medical care.

mobile was insured under a no-fault automobile policy with Allstate Insurance Company.

Tousignant's employer provided her with health care insurance through Health Alliance Plan (HAP), a health maintenance organization. Tousignant chose to coordinate her no-fault insurance with "other health . . . coverage," provided by her employer through HAP, pursuant to § 3109a of the no-fault automobile liability act, which provides for such coordination "at appropriately reduced [automobile insurance] premium rates."[3]

The coordination provision in the Allstate no-fault policy provides that when the insured coordinates health care coverages, Allstate shall not be subject to liability for medical expense, under § 3107 of the no-fault act,[4] to the extent such expense is "paid, payable or required to be provided" under any collectible accident, disability, or hospitalization insurance or medical or surgical reimbursement plan.[5]

---

[3] See n 1 for text of § 3109a.

[4] Section 3107 of the no-fault act provides:

> [P]ersonal protection insurance benefits are payable for the following:
> (a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation. [MCL 500.3107; MSA 24.13107.]

[5] The Allstate policy provides:

> If medical expense benefits are identified as excess under Coverage VA in the declarations, Allstate shall not be liable to the extent that any elements of loss covered under Personal Protection Insurance allowable expenses benefits are paid, payable or required to be provided to or on behalf of the named insured or any relative under the provisions of any valid and collectible
> (a) individual, blanket or group accident disability or hospitalization insurance,
> (b) medical or surgical reimbursement plan . . . .

Tousignant was examined and treated after the accident for back and neck pain at the emergency room of the Henry Ford Medical Clinic in West Bloomfield, an HAP facility. She was released with instructions to return if her back or neck pain continued.

Tousignant apparently continued to suffer pain. Instead of returning to the Henry Ford Medical Clinic or another HAP facility or physician, Tousignant sought treatment from a physician other than an HAP physician. This physician performed tests and placed Tousignant on a course of heat treatments for her neck and back one to three times per week for a year.

Tousignant also began periodic treatment with a dentist for possible temporomandibular joint syndrome. The dentist was not an HAP affiliated doctor. It had been suggested that she consult the dentist for clicking in her jaw.

Tousignant telephoned Allstate shortly after her accident to inquire whether it would pay for non-HAP medical care. She acknowledges, and this was confirmed in a letter from Allstate, that Allstate told her that it would only pay for medical care by a non-HAP physician pursuant to a referral from an HAP physician.

Tousignant has not contended that necessary medical care was unavailable or of inadequate quality at HAP facilities.

Allstate, relying on the coordination of benefits provision of the no-fault policy, refused to pay bills submitted by the non-HAP physician and dentist. It contends that any necessary services were "required to be provided" by HAP.

The circuit court granted summary disposition for Allstate.[6] The Court of Appeals reversed stating:

---

[6] Tousignant commenced this action in April, 1988, seeking no-fault

Nothing in the language of the coordination of benefits clause contained in the no-fault contract requires plaintiff to seek all possible treatment through her HMO [health maintenance organization] before she may receive no-fault insurance benefits for medical care not covered by her health coverage. [193 Mich App 415, 418; 484 NW2d 404 (1992).][7]

II

Tousignant contends that coordination does not require that a no-fault insured seek all medical care from the health insurer. When no-fault and health care coverages are coordinated, and, as here, the health insurer (HMO) is a health care provider, and the no-fault insured seeks and obtains medical care from or through the health insurer, the legislative purpose underlying § 3109a of avoiding duplicative payment is achieved because, in such a case, the medical care having been provided by the health insurer, the no-fault insurer is relieved of liability for payment of the expense of such care.[8]

Tousignant argues, however, that when the no-fault insured does not seek medical care from the

benefits for medical expense, wage loss, and replacement services. The only issue now before this Court is Allstate's liability for medical expense.

[7] The majority observed that there was a conflict among panels of the Court regarding this issue, and referred to *Calhoun v Auto Club Ins Ass'n,* 177 Mich App 85; 441 NW2d 54 (1989), and *Major v Auto Club Ins Ass'n,* 185 Mich App 437; 462 NW2d 771 (1990).

The majority stated that it believed *Calhoun* represents "the better-reasoned view." *Id.* at 418. A dissenting judge stated she would follow *Major* "which holds that an insured who pays a reduced premium in exchange for coordinated medical benefits coverage is required to seek benefits provided by the primary insurer before seeking payment from the no-fault insurer." *Id.* at 419.

[8] See *Morgan v Citizens Ins Co,* 432 Mich 640, 648, n 11; 442 NW2d 626 (1989).

health insurer, but rather obtains medical care from other physicians of her choice, the health insurer is not then obliged to provide or pay for such medical care, and thus neither such medical care nor the expense of providing it is "required to be *provided*" by the health insurer. Allstate, Tousignant contends, therefore must pay the bills of the non-HAP physician and dentist, and there is no duplication because only Allstate would pay.

Tousignant stresses that neither § 3109a nor the no-fault policy states that a no-fault insured must seek medical care from a health insurer who is a health care provider, and that neither § 3109a nor the Allstate no-fault policy speak of a health insurer as the "primary insurer."

We conclude, however, that the legislative policy that led to the enactment of § 3109a requires an insured who chooses to coordinate no-fault and health coverages to obtain payment and services from the health insurer to the extent of the health coverage available from the health insurer.

III

Coordination of no-fault and health coverages is optional. "[I]t allows individuals to tailor their insurance coverage to their own special needs."[9] A no-fault insured who desires duplicative medical coverage from no-fault and health insurers can, by not coordinating and thus paying higher premiums, contract for coverage both by a no-fault insurer and a health insurer.

Insureds who coordinate, and thus pay a reduced premium, however, are deemed to have made the health insurer the "primary" insurer respecting injuries in an automobile accident. In *Federal*

[9] *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173, 197; 301 NW2d 775 (1981).

*Kemper Ins Co, Inc v Health Ins Administration, Inc,* 424 Mich 537; 383 NW2d 590 (1986), this Court held that when a no-fault insured coordinates no-fault and health coverages, health insurance is the "primary" coverage, and, thus, the health insurer is primarily liable for payment of the insured's medical expense. The Court so held in the construction of § 3109a, stating that such construction was necessary to make effective the legislative purpose in enacting § 3109a of eliminating, in exchange for a reduction of the premium charged for no-fault insurance, health care coverage under a no-fault policy that is duplicative of health care coverage with a health insurer.

The dispute in *Kemper* was between a no-fault insurer and a health insurer. But the rationale of *Kemper* requires the same construction when the dispute is between an insured under a no-fault policy and the no-fault insurer. If a no-fault insured, who has chosen to coordinate no-fault and health coverages, could recover from the no-fault insurer medical expense obtainable from the health insurer, the legislative purpose—eliminating, in exchange for reduction in premium, health care coverage under a no-fault policy that is duplicative of health care coverage with a health insurer—would be defeated. Whether the controversy is between a no-fault and a health insurer, as in *Kemper,* or is between a no-fault insurer and a no-fault insured, as in the instant case, to make effective the legislative policy underlying § 3109a, the health insurer is the primary insurer to the extent the health insurer has agreed to pay for or provide necessary medical care.

It appears that in *Kemper* the health insurer was strictly an insurer and not also a provider of health care. In the instant case, the health insurer is a health care provider. Section 3109a speaks of

"other health and accident coverage on the insured."[10] Tousignant does not contend that the health care provided by HAP is not "health coverage" within the meaning of § 3109a. It seems to be generally understood and undoubted that HMO coverage is "health coverage" within the meaning of § 3109a, even though HMO coverage consists of providing services rather than paying bills rendered by health care providers chosen by the no-fault insured.

Health care coverage is most frequently provided by one's employer. When an employer opts for coverage by an HMO, rather than by a health insurer that pays bills rendered by health care providers, there is generally limited choice of physicians or facilities because the HMO generally designates the physicians and facilities where services will be performed.[11] When the "other health coverage" coordinated with no-fault coverage is coverage by an HMO, the no-fault insured will thus have limited choice of physicians or facilities through the HMO.

When the "other health coverage" coordinated with no-fault coverage is coverage by a health insurer who is not a health care provider (HMO), and thus the health insurer pays bills rendered by health care providers, the no-fault insured generally has a wide choice of physicians and facilities.[12] Section 3109a, however, does not require that "other health coverage," with which the no-fault insured has chosen to coordinate, provide the no-fault insured with such choice.

Nor does the legislative policy embodied in § 3107, requiring a no-fault insurer to provide

---

[10] See n 1 for text of § 3109a.

[11] An HMO merges the obligation to provide benefits with a requirement that treatment be obtained from particular physicians designated by the HMO at or through HMO facilities.

[12] See *Morgan,* n 8 *supra,* pp 649-650.

necessary medical expense, require that "other
health coverage" under § 3109a provide the no-
fault insured with a choice of physician or facility.
The no-fault insured may retain a wide choice of
physicians and facilities by not coordinating.
Where, however, the no-fault insured's employer
chooses to provide health insurance, or the no-
fault insured chooses to obtain health insurance,
from an HMO, *and the no-fault insured chooses to
coordinate* no-fault and health coverages, the no-
fault insured has, in effect, thereby agreed to
relinquish choice of physician and facility.

Section 3109a and the Allstate policy concern
"benefits" "paid, payable or required to be pro-
vided." No-fault benefits are usually expressed in
dollar amounts.[13] Thinking of benefits in monetary
terms is understandable when benefits are pro-
vided to the recipient in dollar form.[14]

Where, however, the health insurer is also a
health care provider, benefits cannot readily be
expressed in monetary terms. Nevertheless, medi-
cal services that a health insurer, who is also a
health care provider, is obliged to provide, and
would provide if requested, are "benefits payable"
within the meaning of § 3109a and are "required
to be provided" within the meaning of the Allstate
no-fault policy.

IV

The Allstate no-fault policy states that Allstate
"shall not be liable to the extent that any ele-
ments of loss covered under Personal Protection
Insurance allowable expenses benefits are paid,

---

[13] *Morgan,* n 8 *supra,* p 646.

[14] See *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich
524; 273 NW2d 829 (1979) (social security survivor's benefits); *Thomp-
son v DAIIE,* 418 Mich 610; 344 NW2d 764 (1984) (social security
disability benefits received by dependents).

*payable or required to be provided* to or on behalf of the named insured or any relative under the provisions of any valid and collectible" health insurance policy. (Emphasis added.)

The Allstate policy thus states that Allstate will not pay any expense that the health insurer has paid, will pay, or is required to pay or provide. Allstate will only pay the expense the health insurer is not obligated to pay for or provide.

We agree with Allstate that the language of its policy is a fair construction of the meaning of § 3109a as construed in *Kemper,* and fairly reflects what it means for a health insurer to be "primary."

The question then is what benefits were "payable" or "required to be provided" by HAP.

A

In *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634; 344 NW2d 773 (1984), this Court construed the term "required to be provided" under another section of the no-fault act. The Court held that no setoff was available under § 3109(1)[15] for workers' compensation benefits where the benefits would not in fact be paid to a worker injured in an automobile accident because the employer had not obtained workers' compensation insurance. The lead opinion states:

---

[15] Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury. [MCL 500.3109(1); MSA 24.13109(1).]

In *Perez,* the no-fault insurer had refused to pay no-fault medical and work loss benefits because it claimed a setoff under § 3109(1) for workers' compensation benefits that were required to be provided under state law. The injured worker would not, however, receive workers' compensation benefits because the employer did not have this insurance coverage.

The "required to be provided" clause of § 3109(1) means that the *injured person is obliged to use reasonable efforts to obtain payments that are available* from a workers' compensation insurer. If workers' compensation payments are available to him, he does not have a choice of seeking workers' compensation or no-fault benefits; the no-fault insurer is entitled to subtract the available workers' compensation payments *even if they are not in fact paid because of the failure of the injured person to use reasonable efforts to obtain them.*[16] [Emphasis added.]

"[P]rovided or required to be provided" is the term used in § 3109(1) establishing mandatory statutory coordination of no-fault benefits with benefits required to be provided under state or federal law. Similar language is used in the Allstate policy. Section 3109(1) sets up a mandatory setoff by using the terms "provided or required to be provided."

Section 3109a states that the coordination of benefits shall apply to "benefits payable." The words "payable" and "required to be provided" are "functionally equivalent."[17]

B

In deciding whether health care was available from HAP, the focus should be on the HAP contract as it is applied in practice. Section 3109a does not require a health insurer to provide particular benefits. The availability of services thus depends on what the contract means as applied in practice, a question of fact as well as of legal construction of a contract document.

Tousignant does not contend that HAP would not

---

[16] *Perez, supra,* pp 645-646 (opinion of LEVIN, J.).

[17] *Perez, supra,* p 647, n 19.

or could not provide the medical care she needed.[18] Nor is this a case in which it is claimed that the quality of the available care was such that it can be said that the benefit was not available.[19]

Where there is no claim that the health insurer would not or could not provide the necessary medical treatment, there is no basis for a finding that the benefits were not available—not "payable" or "required to be provided"—from the health insurer.

CAVANAGH, C.J., and GRIFFIN and MALLETT, JJ., concurred with LEVIN, J.

BOYLE, J. (*concurring in part and dissenting in part*). For the reasons expressed in my separate opinion in *Profit v Citizens Ins Co of America,* 444 Mich 281; 506 NW2d 514 (1993), I concur in the majority's result but disagree with the majority's rationale.

BRICKLEY and RILEY, JJ., concurred with BOYLE, J.

[18] Cf. *Owens v ACIA,* 444 Mich 314; 506 NW2d 850 (1993), in which the plaintiff alleged that the Veteran's Administration medical system could not provide the rehabilitation services he needed.

[19] See *Morgan,* n 8 *supra,* pp 649, 652, n 3.