*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF NICOLE YVETTE REID, by JAMES
REID, JR., Personal Representative,

        Plaintiff-Appellee,

and

PHYSIATRY AND REHAB ASSOCIATES, PLLC,
doing business as COLUMBIA CLINIC, and
CAPITAL HEALTH CARE, PC,

        Intervening Plaintiffs-Appellees,

v

WARDELL COUNCIL, COUNCIL TRANSPORT,
LLC, AUTO EXPEDITING, INC., and RYAN
TRANSPORTATION, INC.,

        Defendants,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, also known as STATE
FARM FIRE AND CASUALTY COMPANY,

        Defendant-Appellant.

UNPUBLISHED
November 9, 2021

No. 355062
Wayne Circuit Court
LC No. 18-015918-NI

Before: GLEICHER, P.J., and K. F. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

When clients coordinate their health insurance with their no-fault insurance, medical bills arising from a motor vehicle accident are paid by the health insurance company. If clients choose providers outside of their healthcare network, despite the availability of services within the

-1-

network, any uncovered costs do not become the responsibility of—or fall on—the no-fault insurer. Yet in this case, they did.

Nicole Reid paid a discounted premium for her State Farm no-fault policy because she coordinated the policy with her health insurance. Reid received medical services from Columbia Clinic and Capital Health Care, PC following a motor vehicle accident. Neither provider accepted her Blue Care Network (BCN) plan and they sought recovery from State Farm. State Farm denied coverage, but the circuit court ordered State Farm to pay. However, neither Reid nor the personal representative of her estate ever claimed that similar services were not available through a BCN-covered provider. Therefore, ordering State Farm to pay was error.

We reverse and remand for entry of an order granting summary disposition in State Farm's favor.

## I. BACKGROUND

Nicole Reid was in a major motor vehicle accident in October 2018. She contacted State Farm, who provided her no-fault insurance. When Reid purchased her no-fault policy, she coordinated benefits with her healthcare insurance, provided through BCN. Under the policy's coordination provision, State Farm was not liable for "any remaining amount . . . paid or payable to that person under any . . . medical or surgical reimbursement plan." Reid's BCN policy, in turn, provided that it would be first in priority if Reid chose to coordinate her no-fault and health insurance policies.

Following her accident, Reid received many medical services covered by BCN and various non-medical services covered by State Farm. At issue in this appeal are medical services provided to Reid by Columbia Clinic and Capital Health Care. BCN "does not pay claims or coordinate Benefits for services that" are "not provided or Preauthorized by BCN and a Primary Care Physician" and that are "not Covered Services under this Certificate." Under the plan, "medical and hospital Services are covered only when" they are "[p]rovided by a Participating Provider" or "[p]reauthorized by BCN for select Services[.]" There is no dispute that Columbia and Capital do not participate in BCN's network and were not preauthorized by BCN. Accordingly, BCN refused payment. Columbia and Capital submitted their claims to State Farm, which were rejected based on the coordination of benefits provision of Reid's policy.

Columbia and Capital intervened in the current lawsuit that Reid had filed regarding various coverage and liability issues. They sought reimbursement from State Farm for the services provided to Reid. State Farm sought summary disposition, arguing that under *Tousignant v Allstate Ins Co*, 444 Mich 301; 506 NW2d 844 (1993), and the State Farm coordination provision, any benefits for allowable expenses sought by Reid had to be reduced by any amount paid or payable under her BCN health insurance plan. And Reid was required to make reasonable efforts to seek out providers covered by her BCN policy. State Farm contended that it was not liable for the services provided by Capital and Columbia as Reid made no allegation that she sought similar services from providers within her network.

The circuit court denied State Farm's motion without holding a hearing, stating simply: "Under these facts, [State Farm]'s argument concerning coordination of benefits is incorrect

pursuant [to] Tousignant vs. Allstate Ins. Co. [sic], 444 Mich 301; 506 NW2d 844 (1993)." After unsuccessfully seeking reconsideration of this order, this Court granted State Farm's application for leave to appeal. *Estate of Nicole Yvette Reid v Wardell Council*, unpublished order of the Court of Appeals, entered December 23, 2020 (Docket No. 355062).

## II. ANALYSIS

We review de novo a circuit court's resolution of a summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Id*. at 120 (quotation marks and citations omitted).]

We also review de novo questions regarding the proper interpretation of an insurance policy. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). "[T]he primary goal when interpreting an insurance policy is to honor the intent of the parties. . . ." *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 682; 939 NW2d 738 (2019). "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory*, 473 Mich at 464.

At the time of Reid's accident, MCL 500.3109a of the no-fault act provided for the coordination of benefits as follows:

> An insurer providing personal protection insurance benefits under this chapter may offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. [MCL 500.3109a, as enacted by 2012 PA 454.[1]]

Under this statute, "when an individual has health insurance, the individual may purchase a coordinated no-fault . . . policy at a reduced premium." *Farm Bureau Gen Ins v Blue Cross Blue Shield of Mich*, 314 Mich App 12, 21; 884 NW2d 853 (2016). The goal is to save money; the insured who already pays for or is otherwise provided with health insurance coverage has medical bills covered by the health insurance policy in exchange for a reduced no-fault premium. The healthcare insurer is primarily responsible for medical expenses, and the no-fault insurer is responsible for covering other damages and losses. *Id*. Stated differently, the economic goal of this provision "is to eliminate duplicative recovery for services and to contain insurance and healthcare costs." *Id*. But coordination of healthcare and no-fault insurance is optional; an insured

---

[1] MCL 500.3109a was substantially rewritten when the no-fault act was recently reformed. See 2019 PA 21; 2019 PA 22. Although worded differently, the substance of MCL 500.3109a is now contained in MCL 500.3109a(1).

can pay a higher premium and be entitled to "duplicative medical coverage from no-fault and health insurers." *Tousignant*, 444 Mich at 307.

There remained dispute after the passage of MCL 500.3109a whether a no-fault insurer would be liable for healthcare services an injured party received that were not covered by his or her health insurance policy. *Tousignant*, 444 Mich at 307, concluded "that the legislative policy that led to the enactment of § 3109a requires an insured who chooses to coordinate no-fault and health coverages to obtain payment and services from the health insurer *to the extent of the health coverage available from the health insurer*." (Emphasis added.) The extent of the health coverage available is limited by health maintenance organizations (HMOs), such as BCN. "[T]he HMO generally designates the physicians and facilities where services will be performed," "limit[ing] choice of physicians or facilities." *Id*. at 309. Ultimately, "[w]here . . . the no-fault insured's employer chooses to provide health insurance, or the no-fault insured chooses to obtain health insurance, from an HMO, *and the no-fault insured chooses to coordinate* no-fault and health coverages, the no-fault insured has, in effect, thereby agreed to relinquish choice of physician and facility." *Id*. at 310 (emphasis in original).

This is exactly what happened in this case. Reid was covered by a BCN HMO. The BCN certificate of coverage provides that the client "recognize[s] that, except for Emergency health services, only health care services provided by your Primary Care Physician or arranged and approved by BCN are covered." The policy further provides that "medical and hospital Services are covered only when" they are "[p]rovided by a Participating Provider" or "[p]reauthorized by BCN for select Services[.]" It is undisputed that Capital and Columbia are not BCN participating providers. And neither Reid nor her personal representative ever asserted that the services received from Capital and Columbia were "Emergency health services" or that BCN "arranged or approved" of services through these out-of-network providers.

*Tousignant* provides another exception to the rule when the medical services required by a person injured in an automobile accident are not available under his or healthcare insurance. In *Tousignant*, 444 Mich at 304, the coordination provision in the injured party's no-fault policy provided the no-fault insurer would not be liable for medical costs "to the extent such expense is 'paid, payable or required to be provided' under any" health insurance. The State Farm policy in this case is worded slightly differently, releasing State Farm from any liability for amounts "paid or payable to" the injured person under the health insurance policy. The *Tousignant* Court found the terms "payable" and "required to be provided" to be "functionally equivalent." *Id*. at 312 (quotation marks omitted). The different policy terminology is therefore irrelevant. In this case, as in *Tousignant*, 444 Mich at 312-313, to secure State Farm coverage of the Capital and Columbia medical expenses, Reid was required to establish that BCN "would not or could not provide the medical care she needed." Just as in *Tousignant*, neither Reid nor the personal representative of her estate ever "contended that necessary medical care was unavailable or of inadequate quality at [BCN] facilities." *Id*. at 305.

The circuit court erroneously concluded that *Tousignant* did not apply and denied State Farm's motion for summary disposition. *Tousignant* is clear: when "there is no claim that the health insurer would not or could not provide the necessary medical treatment, there is no basis for a finding that the benefits were not available—not 'payable' or 'required to be provided'— from the health insurer." *Tousignant*, 444 Mich at 313; see also *St John Macomb-Oakland Hosp*

*v State Farm Mut Auto Ins Co*, 318 Mich App 256, 264; 896 NW2d 85 (2016) (explaining that "a plaintiff must make reasonable efforts to obtain payments that are available from the health insurer in order to establish that the benefits are not payable by the health insurer").  No such claim was made here and State Farm was not required to pick up the slack and pay the Columbia and Capital bills.  The court should have summarily dismissed Columbia and Capital's claims in favor of State Farm.

We reverse and remand for entry of an order granting summary disposition in State Farm's favor.  We do not retain jurisdiction.


/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Amy Ronayne Krause