*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAWAD AL SHAH, M.D., PC, doing business as
INSIGHT INSTITUTE,

        Plaintiff-Appellant,

UNPUBLISHED
January 27, 2022

v

LIBERTY MUTUAL INSURANCE COMPANY,

        Defendant-Appellee.

No. 356062
Washtenaw Circuit Court
LC No. 19-000970-NF

Before: GLEICHER, P.J., and BORRELLO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff appeals as of right the order granting defendant's motion for summary disposition under MCR 2.116(C)(7) and MCR 2.116(C)(10). We affirm.

## I. FACTUAL BACKGROUND

In early 2018, Ronald Stamps was injured in a motor vehicle accident. Stamps had health insurance through Health Alliance Plan (HAP), and he had a no-fault policy issued by defendant. Plaintiff provided treatment to Stamps, and Stamps assigned his right to payment for healthcare services to plaintiff. Plaintiff billed HAP for the treatments. HAP made multiple adjusted-rate payments. However, it denied some benefits and partially paid others, leaving an outstanding balance. Plaintiff filed a complaint against defendant seeking personal protection insurance (PIP) benefits in the amount of $32,220.23 for unpaid medical bills. Defendant moved the trial court for summary disposition under MCR 2.116(C)(7) and MCR 2.116(C)(10), generally relying on the fact that Stamps's no-fault policy was coordinated.

Defendant argued that HAP was therefore primarily responsible for payment of benefits, and plaintiff had provided no evidence in support of a basis for imposing responsibility upon defendant. Plaintiff argued that defendant failed to establish that Stamps chose to coordinate his benefits and received a reduced premium as a result, and defendant had also failed to show that the same or similar treatment would have been available in-network. However, at the hearing, plaintiff did not know whether it actually was in HAP's network. The trial court, relying on *Tousignant v Allstate Ins Co*, 444 Mich 301; 506 NW2d 844 (1993), concluded that the no-fault

policy was coordinated and that defendant was not "on the hook for the balance billing of" plaintiff. It therefore granted summary disposition in favor of defendant. Plaintiff moved the trial court for reconsideration, which, the trial court denied. This appeal followed.

## II. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120. Under MCR 2.116(C)(7), where the claim is allegedly barred, the trial court must accept as true the contents of the complaint, unless they are contradicted by documentary evidence submitted by the moving party. *Id*. at 119. The interpretation and application of statutes, rules, and legal doctrines is likewise reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). This Court reviews de novo as a question of law the proper interpretation of a contract. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

## III. APPLICABLE LEGAL PRINCIPLES

"MCL 500.3109a permits an individual to coordinate his or her no-fault insurance policy and other health and accident insurance policies at a reduced premium rate" with the goal of "eliminat[ing] duplicative recovery for services and [containing] insurance and healthcare costs." *St John Macomb Oakland Hosp v State Farm Mut Auto Ins Co*, 318 Mich App 256, 263; 896 NW2d 85 (2016) (quotation omitted). "Coordination of no-fault and health coverages is optional" and "allows individuals to tailor their insurance coverage to their own special needs." *Tousignant*, 444 Mich at 307 (citations and quotation omitted). "When an individual chooses to coordinate his or her no-fault and health insurance coverage, the health insurer becomes primarily liable for medical expenses." *St John*, 318 Mich App at 263. As a result, "a no-fault insurer is not subject to liability for medical expenses that the insured's health care insurer is required, under its contract, to pay for or provide." *Tousignant*, 444 Mich at 303 (footnote omitted). If an insured "chooses to coordinate no-fault and health coverages" under MCL 500.3109a(1), he or she must "obtain payment and services from the health insurer to the extent of the health coverage available from the health insurer." *Id*. at 307. "[W]hen payment for medical services is governed by a contract between a healthcare provider and a health insurer, the provider is bound by the terms of the agreement." *Farm Bureau Gen Ins Co v Blue Cross Blue Shield*, 314 Mich App 12, 21; 884 NW2d 853 (2016).

"[T]he injured person is obliged to use reasonable efforts to obtain payments that are available from [the health] insurer." *Tousignant*, 444 Mich at 312 (emphasis omitted). "Payment in keeping with the terms of the agreement constitutes payment in full, and neither the insured nor the healthcare provider can seek additional payment from a no-fault insurer for covered services." *Farm Bureau*, 314 Mich App at 21. However, an injured person "is able to seek reimbursement for 'allowable expenses' that were not contractually required to be provided by the health care provider." *Sprague v Farmers Ins Exch*, 251 Mich App 260, 270; 650 NW2d 374 (2002). If the health insurer "would not or could not provide the medical care [the injured person] needed," or if

the available care was inadequate, then the benefit might be considered not "available" from the health insurer. *Tousignant*, 444 Mich at 312-313. The inquiry turns on the contract between the injured person and the health insurer. *Id*. at 312.

## IV. COORDINATION OF BENEFITS

Plaintiff nominally contends that the no-fault insurance policy was not coordinated. However, there is no serious dispute that the policy unambiguously states in the "Coverage Information" section that "Coordination of Medical Expenses and Work Loss Applies." Rather, plaintiff argues that there is no evidence Stamps consciously chose to coordinate benefits, and there is no evidence Stamps actually received a reduced premium in exchange for coordinating benefits. Regarding the former, "one who signs an agreement, in the absence of coercion, mistake, or fraud, is presumed to know the nature of the document and to understand its contents, even if he or she has not read the agreement." *Clark v DaimlerChrysler Corp*, 268 Mich App 138, 144-145; 706 NW2d 471 (2005). Plaintiff therefore misapprehends the applicable burden of proof and has provided no evidence upon which the presumption could be overcome. Regarding the latter, we presume, although we do not decide, that Stamps might have a claim against defendant if he did not actually receive reduced premiums. However, "[s]ection [500.3109a] does not require a health insurer to demonstrate a premium rate reduction to validate a coordination of benefits clause in the certificate of coverage." *Smith v Physicians Health Plan*, 444 Mich 743, 756; 514 NW2d 150 (1994). Plaintiff offers no authority to the contrary.

The trial court properly found that the no-fault policy was coordinated. Therefore, HAP was primarily liable for Stamps's medical expenses, and defendant was not liable for any medical expenses HAP was required, under its contract, to pay.

## V. REASONABLE EFFORTS

Because Stamps assigned his right to collect payments to plaintiff, plaintiff was required to use "reasonable efforts" to obtain payment from HAP before turning to defendant. *Coventry Parkhomes Cond Ass'n v Federal Nat'l Mortgage Ass'n*, 298 Mich App 252, 256-257; 827 NW2d 379 (2012) ("It is well established that an assignee stands in the shoes of an assignor, acquiring the same rights and being subject to the same defenses as the assignor."). We have concluded that a plaintiff made "reasonable efforts" by filing a claim with the health insurer, and the plaintiff was not obligated "to engage in a potentially lengthy appeals process with the health insurance company." *St John*, 318 Mich App at 265-268. Plaintiff made "reasonable efforts" to obtain payment from HAP by billing HAP for the medical services provided to Stamps.

Plaintiff argues that it can now turn to defendant to seek payment for the outstanding balance. On this record, we disagree. Plaintiff provided no evidence of what HAP was required to pay under its contract. Plaintiff did not provide a copy of the contract between HAP and Stamps, and plaintiff did not even provide a summary of its contents.[1] Indeed, plaintiff did not even know

---

[1] Plaintiff apparently believes this was defendant's obligation. Plaintiff is incorrect. As discussed, evidence that HAP could not or would not provide the medical services at issue is a prerequisite

whether it was in HAP's network, let alone whether HAP would or could provide the necessary medical care in-network. Plaintiff is precluded from seeking additional payment from defendant to the extent HAP fully paid plaintiff under the terms of Stamps's contract with HAP. *Farm Bureau*, 314 Mich App at 21. Plaintiff may seek reimbursement from defendant if HAP's contract did not require it to pay for the provided medical care. *Tousignant*, 444 Mich at 312-313. However, no determination can be made without HAP's contract. See *id*.

As noted, plaintiff did not provide a copy of HAP's contract, nor did it know whether it was in HAP's network. Rather, the evidence available to the trial court included evidence that HAP made timely payments in response to plaintiff's billing and reduced the rate of each of those payments. HAP rejected some payments, paid others in full, and paid others in part. In addition, as pointed out by defense counsel at the hearing, HAP's remittance records balanced out to zero, meaning that no further payments were owed to plaintiff. The fact that HAP made timely rate-adjusted payments suggests HAP complied with its payment obligations under the contract.[2]

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause

---

to plaintiff's claim against defendant. The absence of a genuine question of material fact may be established by showing that the nonmoving party has failed to provide evidence of an essential element of the claim. *Quinto v Cross and Peters Co*, 451 Mich 358, 361-362; 547 NW2d 314 (1996). It was therefore incumbent upon plaintiff to provide evidence establishing, at a minimum, a question of fact whether the provided medical services were available under HAP's contract.

[2] We recognize that plaintiff has raised a further argument for the first time in its reply brief on appeal, speculating that the HAP policy may be a self-funded ERISA plan that preempts the coordination scheme in the no-fault act, thereby rendering defendant primarily liable. "[A]bsent unusual circumstances, issues not raised at trial may not be raised on appeal." *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). Plaintiff offers no supporting evidence. See *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). We therefore find no reason to overlook the issue preservation requirements in this matter. Cf. *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002).