*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

ADVANCE THERAPY & REHAB INC.,

Plaintiff-Appellee,

v

AUTO-OWNERS INSURANCE COMPANY,

Defendant-Appellant.

FOR PUBLICATION
March 2, 2023
9:40 a.m.

No. 359673
Wayne Circuit Court
LC No. 21-007153-AV

Before: K. F. KELLY, P.J., and MURRAY and SWARTZLE, JJ.

SWARTZLE, J.

A person coordinates health-insurance coverage under a preferred provider organization (PPO) policy with personal-protection insurance (PIP) coverage under a no-fault policy. The former is the primary insurance for covered medical expenses, and the latter is secondary. Does our Supreme Court's decision in *Tousignant v Allstate Ins Co*, 444 Mich 301; 506 NW2d 844 (1993), require that, as argued by the no-fault insurer here, the insured person must maximize the amount covered by the primary PPO insurer before seeking coverage from the secondary no-fault insurer? As explained below, *Tousignant*'s holding depended on the fact that the primary health insurer in that case was a health maintenance organization (HMO). Finding no requirement in the law that the insured must maximize the amount covered by the primary PPO insurer—or, said a different way, minimize the amount that the secondary no-fault insurer must pay—we affirm the trial court's denial of defendant's motion for summary disposition.

## I. BACKGROUND

The facts relevant for this appeal are brief: Andre Yglesias was injured in an automobile accident, and he sought treatment for his injures from plaintiff. At the time of the accident, Yglesias had coordinated his health insurance through CIGNA, with his no-fault insurance through Auto-Owners Insurance Company.

CIGNA offered a PPO plan through Yglesias' employer. As typical with PPOs, the CIGNA plan provided Yglesias with coverage for services by both in-network and out-of-network medical providers. Services by in-network providers had a lower annual deductible ($2,000) and higher coverage percentage (80%) than similar services by out-of-network providers ($6,000 and

-1-

60%, respectively). Yglesias sought treatment from Advance Therapy & Rehab Inc., an out-of-network provider, and he assigned to the provider the right to recover payment for his treatment.

Advance Therapy sent CIGNA the bill for Yglesias' treatment, but CIGNA did not pay it because the provider was out-of-network and Yglesias had not yet met the applicable deductible. CIGNA did, however, apply the amount of the bill to that deductible. Advance Therapy then sought payment from Auto-Owners.

Auto-Owners refused to pay the bill, even though Yglesias elected to receive "Excess Medical" coverage under the no-fault policy. The provision states, in relevant part:

2. MEDICAL EXPENSE

When the Declarations state Personal Injury Protection:

a. "Excess of Other Insurance", or
b. "Excess Medical"
the medical expense benefits provided to the named insured or a relative in accordance with Chapter 31 of the Michigan Insurance Code do not apply until either:

a. Treatment has been sought and received from all sources of health and accident coverage available to the named insured or relative in accordance with the prescribed guidelines of the health and accident coverage providers:

(1) for determination of covered treatment; and
(2) for securing covered treatment; and
(3) for payment for covered treatment; or

b. all available health and accident coverage providers:

(1) determine there is no authorized health care provider qualified to provide treatment; and
(2) determine there is no prescribed guidelines for obtaining treatment from any health care provider; and
(3) deny coverage for treatment.

Advance Therapy sued Auto-Owners in the district court, and Auto-Owners moved for summary disposition under MCR 2.116(C)(10). Auto-Owners argued that under our Supreme Court's ruling in *Tousignant*, Auto-Owners did not have an obligation to pay Advance Therapy's bill because Yglesias elected to seek an out-of-network provider instead of trying to mitigate his out-of-pocket expenses by using an in-network provider. The district court denied Auto-Owner's motion. Auto-Owners sought leave to appeal with the circuit court, but such leave was denied. This Court then subsequently granted leave to appeal. *Advance Therapy & Rehab Inc v Auto-Owners Ins Co*, unpublished order of the Court of Appeals, entered April 1, 2022 (Docket No. 359673).

II. ANALYSIS

This Court reviews "the circuit court's affirmance of the district court's denial of defendant's motion for summary disposition . . . de novo." *First of America Bank v Thompson*, 217 Mich App 581, 583; 552 NW2d 516 (1996). When deciding a motion for summary disposition under MCR 2.116(C)(10), we consider the evidence submitted in a light most favorable to the nonmoving party. *Payne v Payne*, 338 Mich App 265, 274; 979 NW2d 706 (2021). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020) (citations omitted).

Our Legislature has provided that a person can elect to coordinate health-insurance coverage with no-fault coverage. See MCL 500.3109a(1). The parties acknowledge that the vehicle collision in question happened prior to the effective date of the recent amendments to the no-fault act, so we apply the prior version. With that said, neither party has argued that the amendments have any impact on the operative question here.

Auto-Owners argues on appeal that, when a person elects to coordinate primary health-insurance coverage with secondary no-fault PIP coverage, our Supreme Court's decision in *Tousignant* requires that the person mitigate any out-of-pocket expenses by seeking treatment that would be maximally covered by the primary insurer. It is undisputed that Yglesias elected to coordinate his benefits between CIGNA and Auto-Owners. "When no-fault coverage and health insurance are coordinated, the health insurer is primarily liable for the insured's medical expenses." *Farm Bureau Gen Ins Co v Blue Cross Blue Shield of Mich*, 314 Mich App 12, 21; 884 NW2d 853 (2016).

Contrary to defendant's argument, however, *Tousignant* does not require an insured person to mitigate damages through in-network treatment when out-of-network treatment is covered by the primary insurer. Key to the *Tousignant* decision is that the insured had health insurance through an HMO. Generally speaking, an HMO provides relatively inexpensive premiums, deductibles, and charges for medical services, but in exchange, the choices with respect to providers of medical services are strictly limited. In contrast, a PPO generally provides more choices with respect to providers of medical services, but the out-of-pocket costs to the insured are higher.

In *Tousignant*, the insured person had coordinated health insurance and no-fault policies, and she was subsequently injured in a vehicle accident. *Tousignant*, 444 Mich at 305-306. Her health-insurance policy was with Health Alliance Plan (HAP), an HMO. *Id*. at 304. When she received treatment for her injuries from a provider that was outside of HAP's network, HAP refused to pay her expenses. *Id*. at 305-306. Her no-fault insurer also refused to pay the expenses. The insured sued her no-fault insurer, arguing that "coordination does not require that a no-fault insured seek all medical care from the health insurer." *Id*. at 306.

Our Supreme Court concluded, however, "that the legislative policy that led to the enactment of § 3109a requires an insured who chooses to coordinate no-fault and health coverage to obtain payment and services from the health insurer *to the extent of the health coverage available from the health insurer*." *Id*. at 307 (emphasis added). HAP was an HMO, and this meant that the insured had to seek treatment from HAP's specifically designated providers; otherwise, she had no health coverage through HAP. *Id*. at 309 n 11. Moreover, there was no

suggestion by the insured that the services she received outside of HAP's network were not available from one of HAP's designated providers. *Id.* at 312-313. Accordingly, because the insured chose to obtain services from a provider outside HAP, and there was no claim that HAP would not or could not have provided the necessary services, there was no basis for finding that HAP would not have provided coverage, and therefore there was no basis for finding that the no-fault insurer had to step in and pay the unpaid expenses. *Id.*

Critically, there is nothing in *Tousignant* that requires an insured to minimize the cost to a secondary no-fault insurer by maximizing the amount that the primary health insurer will cover. Rather, when an insured chooses to coordinate the two policies, the insured must seek to recover expenses obtainable from the primary health insurer before turning to the secondary no-fault insurer. *Id.* at 308. With respect to an HMO, this means, in effect, that an insured must seek necessary services that are available within the HMO network before seeking reimbursement from a coordinated no-fault insurer.

CIGNA did not provide coverage to Yglesias as an HMO, but instead as a PPO. This distinction is material, as CIGNA's PPO policy *did provide coverage* for out-of-network services, even though such coverage was subject to a higher deductible and lower reimbursement rate than services received in-network. When Yglesias submitted the bills to CIGNA, CIGNA did not refuse to pay them because the services provided were out-of-network. Rather, CIGNA acknowledged that the services were covered, but the insurer did not pay the bills because Yglesias had not yet reached the applicable deductible. Instead, CIGNA applied the amount of the bills to Yglesias' deductible. Thus, Yglesias did, in fact, seek "to obtain payment" from CIGNA "to the extent of the health coverage available" from the insurer, and CIGNA did, in fact, provide such coverage (through the credit to Yglesias' deductible). *Id.* at 307.

Under the coordination-of-benefits provision, Auto-Owner's policy with Yglesias covered PIP-related expenses in "excess of other insurance." Before this coverage applied, Yglesias was required, among other things, to receive treatment from a provider that was covered by CIGNA and seek payment for such treatment from CIGNA. As explained, Yglesias did this.

Accordingly, the circuit court did not err by denying Auto-Owners' application for appeal, nor did the circuit court err by denying Auto-Owners' motion for reconsideration, as there was no palpable error with respect to the district court's denial of Auto-Owner's motion for summary disposition.

Affirmed. As the prevailing party, Advance Therapy may tax costs. MCR 7.219.

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray

-4-