SPRAGUE v FARMERS INSURANCE EXCHANGE

Docket No. 227400. Submitted April 9, 2002, at Grand Rapids. Decided
    May 10, 2002, at 9:10 A.M. Leave to appeal sought.

    Kate Sprague, individually and as next friend of Ryan Sprague, a
        minor, brought an action in the 9-1 District Court against Farmers
        Insurance Exchange, the Spragues' automobile insurer, seeking no-
        fault personal protection insurance benefits for chiropractic ser-
        vices rendered to the Spragues (hereinafter collectively referred to
        as the plaintiff) for back and neck pains associated with injuries
        sustained in an automobile accident. Coverage for medical care
        under the plaintiff's policy with the defendant was coordinated
        with coverage from the plaintiff's health maintenance organization,
        Physicians Health Plan. The plaintiff initially had received treat-
        ment from a PHP physician and had undergone physical therapy pre-
        scribed by that physician. The plaintiff then unilaterally decided to
        see a chiropractor, and PHP refused to pay for the chiropractic ser-
        vices on the grounds that the PHP policy excluded coverage for chi-
        ropractic services. The defendant refused to pay for the chiroprac-
        tic services on the grounds that the plaintiff had not made reason-
        able efforts to obtain medical services from PHP by not returning to
        the PHP physician for further treatment. The district court, Ann L.
        Hannon, J., granted summary disposition for the defendant, ruling
        that the plaintiff's failure to use reasonable efforts to obtain medi-
        cal treatment from PHP precluded the plaintiff from seeking pay-
        ment from the defendant for the chiropractic services. On appeal,
        the Kalamazoo Circuit Court, J. Richardson Johnson, J., reversed,
        holding that because PHP did not provide coverage for chiropractic
        services, the defendant was required by the no-fault act, MCL
        500.3101 et seq., to pay for the reasonable costs of the chiropractic
        services. The defendant appealed by leave granted.

        The Court of Appeals held:

        A no-fault insured under a policy providing for coordinated
        health coverage is required to obtain payment and services from
        the health insurer to the extent of the health coverage available
        from the health insurer. Here, where the plaintiff's PHP policy
        excluded coverage for chiropractic services, the defendant no-fault
        insurer is liable for the chiropractic expenses to the extent that the

plaintiff can prove that they represent reasonable charges incurred for reasonably necessary services for the plaintiff's care, recovery, or rehabilitation. On remand, the district court must determine whether the chiropractic services were reasonably necessary services. If the chiropractic services were reasonably necessary services, the defendant must pay for them.

Affirmed; remanded to the district court for further proceedings.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — HEALTH INSURANCE — COORDINATION OF BENEFITS.

A no-fault insurer under a policy providing for coordinated health benefits is liable for expenses for medical products, services, or accommodations for which coverage under the health insurance plan is excluded where the insured can establish that the expenses represent reasonable charges incurred for reasonably necessary products, services, or accommodations for the care, recovery, or rehabilitation of the person who sustained accidental bodily injury arising out of the ownership, operation, or use of a motor vehicle as a motor vehicle (MCL 500.3105[1], 500.3107[1][a], 500.3109a).

*Frederick E. Royce, III*, for the plaintiff.

*Wheeler Upham, P.C.* (by *Gary A. Maximiuk* and *Jack L. Hoffman*), for the defendant.

Amicus Curiae:

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Kevin J. Moody* and *Clifford T. Floor*), for Michigan Chiropractic Council and Michigan Chiropractic Society.

Before: OWENS, P.J., and MARKEY and MURRAY, JJ.

MURRAY, J. Defendant appeals by leave granted the circuit court's reversal of the district court's order granting defendant's motion for summary disposition brought pursuant to MCR 2.116(C)(10). The issue presented in this case is one of first impression and requires us to determine whether, under the no-fault act, MCL 500.3101 *et seq.*, a coordinated benefits clause in a contract of insurance relieves a no-fault

insurer from liability for services received by an insured where those services were not offered by the health care provider and the insured did not first exhaust any available medical treatments offered by that same health care provider. We hold under the facts of this case that defendant is statutorily obligated to pay the "allowable expenses" incurred by plaintiff. Accordingly, we affirm the circuit court's decision and remand this case to the district court for further proceedings consistent with this opinion.

### I. BASIC FACTS AND PROCEDURAL HISTORY

The material facts are not in dispute. In November, 1997, plaintiff and her son Ryan[1] were injured in an automobile accident. At the time of the accident plaintiff had health care coverage through her employer with Physicians Health Plan (PHP), a health maintenance organization (HMO). Plaintiff also had no-fault automobile insurance with defendant. Plaintiff elected to coordinate these two insurance plans, thereby receiving a reduced premium for her no-fault insurance benefits. Ryan was an insured person under both plans.

After the accident, plaintiff received treatment from her PHP primary care physician, Dr. Nayana Patel. Dr. Patel's physician's assistant first examined plaintiff, found her to have upper back strain, and placed plaintiff on pain medications. Almost one month later, plaintiff saw Dr. Patel, who diagnosed plaintiff with musculoskeletal neck pain. Dr. Patel continued the medications, scheduled plaintiff for physical therapy,

---

[1] Ms. Sprague and her son both received the chiropractic services at issue under the same set of circumstances and Ms. Sprague sued on her own behalf and on behalf of her son.

and had her temporarily taken off work. After two weeks of physical therapy, plaintiff returned to Dr. Patel, indicating to him that most of the discomfort in her neck had subsided. After conferring, plaintiff and Dr. Patel decided that plaintiff could return to work. The record indicates, however, that plaintiff and Dr. Patel agreed that plaintiff would return for further treatment if she had additional problems.

Approximately one month later, plaintiff began treatment with a chiropractor. Plaintiff did not receive any referrals to a chiropractor from PHP, nor did she return to Dr. Patel or any other authorized PHP physician for any further treatment or medical services. Plaintiff subsequently submitted the chiropractor bills to PHP, which declined coverage on the basis that no PHP referral existed (a requirement of the PHP contract) and because chiropractic services were not covered by PHP.[2] Plaintiff then submitted the bills to defendant, which also denied coverage on the basis that plaintiff had not made reasonable efforts to obtain medical services from PHP. This suit followed.

In the district court, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10), which the district court granted in a written opinion and order. Plaintiff appealed that decision to the circuit court, which upon review de novo reversed the entry of judgment for defendant and remanded to the district court for further proceedings. We granted leave to appeal, and we now affirm.

---

[2] Although the insurance contract between plaintiff and PHP was not made a part of the lower court record, the parties agreed that PHP did not have a contractual obligation to provide chiropractic services.

## II. STANDARD OF REVIEW

We review de novo the trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion for summary disposition brought under MCR 2.116(C)(10) tests the factual support for a claim. *Id.* In recent years the Supreme Court has clarified the standards governing review of motions under this subrule:

> "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4).
>
> "In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. *Neubacher v Glove Furniture Rentals*, 205 Mich App 418, 420; 522 NW2d 335 (1994). The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. *Id.* Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. *McCart v J Walter Thompson*, 437 Mich 109, 115; 469 NW2d 284 (1991). If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. *McCormic v Auto Club Ins Ass'n*, 202 Mich App 233, 237; 507 NW2d 741 (1993)." [*Smith v Globe Life Ins Co*, 460 Mich 446, 454-455; 597 NW2d 28 (1999), quoting *Quinto v*

*Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996).]

"A litigant's mere pledge to establish an issue of fact at trial cannot survive summary disposition under MCR 2.116(C)(10)." *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). Instead, a litigant opposing a properly supported motion for summary disposition under this subrule must present substantively admissible evidence to the trial court before its decision on the motion, which creates a genuine issue of material fact. *Id.*

### III. ANALYSIS

By the time this case reached our Court, both sides were, in baseball jargon, "batting .500," because both had successfully convinced a different learned trial judge that their position was the legally correct one. Defendant argues on appeal, and the district court held, that under *Tousignant v Allstate Ins Co*, 444 Mich 301; 506 NW2d 844 (1993), plaintiff's failure to utilize reasonable efforts to obtain available medical treatment from PHP precluded her from obtaining from defendant the reasonable cost of her chiropractic services. Plaintiff, on the other hand, convinced the circuit court on review de novo to accept her argument, holding that *Tousignant* and its reasoning were not applicable and that because PHP did not provide chiropractic services, defendant was required under the act to pay for the reasonable costs of the chiropractic services.[3]

---

[3] On the basis of its holding on this issue, the circuit court remanded the case to the district court for a determination whether the chiropractic services were reasonably necessary as required by MCL 500.3107(1)(a).

Although the parties have agreed throughout this proceeding that the outcome of this case is controlled by case law, we must first seek guidance from the statutory language itself. The statute is, after all, the "rule book" for deciding issues surrounding the awarding of benefits under the act. *Cruz v State Farm Mut Automobile Ins Co*, 241 Mich App 159, 164; 614 NW2d 689 (2000), lv gtd 464 Mich 873 (2001). Resolution of this dispute primarily involves application of three sections of the act, MCL 500.3105, 500.3107, and 500.3109a.[4]

Section 3105 contains the legislative liability determination that, subject to the other provisions of the act, "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle . . . ." MCL 500.3105(1). Subsection 3107(1)(a) sets forth the type of benefits a no-fault insurer is liable for under § 3105 and provides in pertinent part:

(1) Except as provided in subsection (2), personal protection insurance benefits are payable for the following:

(a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.

In *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 48-49; 457 NW2d 637 (1990), the Supreme Court described the interplay between the foregoing statutory provisions:

---

[4] We also recognize that the act is to be liberally construed in favor of coverage. *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 631; 563 NW2d 683 (1997); *Gobler v Auto-Owners Ins Co*, 428 Mich 51, 61; 404 NW2d 199 (1987).

> Under § 3105 of the no-fault act, an insurer is *"liable* to pay [PIP] benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, *subject to the provisions of this chapter."* (Emphasis added.) The relevant provision in this case is § 3107, which provides that PIP benefits are payable only for "[a]llowable expenses." Section 3107 defines allowable expenses as "consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."

MCL 500.3109a, in turn, requires a no-fault insurer to offer benefits coordination with health and accident coverage, which in turns affords the insured a lower premium. That section provides in pertinent part: "An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably *related to other health and accident coverage on the insured."* MCL 500.3109a (emphasis added).

In *Toth v AutoAlliance Int'l, Inc,* 246 Mich App 732, 737; 635 NW2d 62 (2001), this Court set forth the well-settled principles of statutory construction that are equally applicable in this case:

> The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent. *Frankenmuth Mut Ins Co v Marlette Homes, Inc,* 456 Mich 511, 515; 573 NW2d 611 (1998). If the plain and ordinary meaning of the statute is clear, judicial construction is neither necessary nor permitted. *Elia v Hazen,* 242 Mich App 374, 381; 619 NW2d 1 (2000). We may not speculate with regard to the probable intent of the Legislature beyond the words expressed in the statute. *In re Schnell,* 214 Mich App 304, 310; 543 NW2d 11 (1995). When reasonable minds may differ with respect to the meaning of a statute, the courts must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best

accomplishes the purpose of the statute. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994).

It is well settled that MCL 500.3109a

requires no-fault insurers to offer, at a reduced premium, personal injury protection benefits that are coordinated with benefits available from other health and accident coverage. The coordination of benefits clause serves to contain automobile insurance and health insurance costs while eliminating duplicative recovery. Under Michigan law, where no-fault coverage and health coverage are coordinated, the health insurer is primarily liable for plaintiff's medical expenses. [*American Medical Security, Inc v Allstate Ins Co*, 235 Mich App 301, 303-304; 597 NW2d 244 (1999) (citations omitted).]

In *Tousignant, supra*, our Supreme Court held that "a no-fault insurer is not subject to liability for medical expenses that the insured's health care insurer is *required, under its contract, to pay for or provide.*" *Tousignant, supra* at 303 (emphasis added). In that case, the plaintiff was examined and treated at a Health Alliance Plan (HAP) facility and released with instructions to return if her back or neck pain continued. The plaintiff apparently continued to suffer pain, but instead of returning to an HAP facility or physician, the plaintiff sought treatment from a physician other than an HAP physician. *Id.* at 305. In addition, the plaintiff obtained treatment from a dentist who was also not affiliated with HAP. The plaintiff then sought reimbursement from her automobile insurer for any non-HAP medical care. The automobile insurer informed the plaintiff that it would reimburse her only for medical care provided by a non-HAP physician pursuant to a referral from an HAP physician. *Id.*

After noting the legislative purposes underlying MCL 500.3109a, and the general limitation of choice available from HMOs, the Supreme Court held that where "the no-fault insured's employer chooses to provide health insurance, or the no-fault insured chooses to obtain health insurance, from an HMO, *and the no-fault insured chooses to coordinate* no-fault and health coverages, the no-fault insured has, in effect, thereby agreed to relinquish choice of physician and facility." *Tousignant, supra* at 310 (emphasis in original).

The *Tousignant* holding does not, however, resolve the issue before us because the *Tousignant* Court repeatedly emphasized that it was addressing the situation where the insured utilized the services of a medical care provider for services that the insured's health insurer had already contractually agreed to provide to the insured. For example, the Court's specific holding was "that a no-fault insurer is not subject to liability for medical expense that the insured's health care insurer is *required, under its contract, to pay for or provide." Id.* at 303 (emphasis added). The Court also noted several times in its opinion that the plaintiff was not alleging that the necessary medical care was "unavailable or of inadequate quality" at HAP facilities. *Id.* at 303, n 2, 305. Additionally, the Court explained its conclusion by stating that coordination provisions in a contract requires the insured "to obtain payment and services from the health insurer *to the extent of the health coverage available from the health insurer." Id.* at 307 (emphasis added). Finally, the Court amplified its holding by noting that the policy of precluding duplicative recovery would be ineffectual if an insured could obtain from the no-fault

insurer "medical expense *obtainable*" from the health insurer. *Id.* at 308 (emphasis added).

As the foregoing discussion amply illustrates, the *Tousignant* Court's holding was premised on the significant fact that the services utilized by the insured were already "obtainable" and "available" from the health insurer, as the primary insurer, under the contract held by the insured. Therefore, to order the no-fault insurer to pay for benefits that the health care provider was already contractually bound to provide would allow for duplicative recovery and excessive health care costs. Hence, the contractual coordination provision precluded the plaintiff's recovery in that case. This point is further illustrated in *Booth v Auto-Owners Ins Co*, 224 Mich App 724, 734-735; 569 NW2d 903 (1997), as follows:

> In *Tousignant* and *Owens*, the Supreme Court held that by choosing to coordinate health care coverage, the insureds agreed in effect to avail themselves of the *coverage provided*, *Owens*, *supra* at 321, and relinquish choices of physician and facility, *where the coverage is provided* by a health maintenance organization as in *Tousignant*, *supra* at 310. [Emphasis added.]

Hence, under *Tousignant* and *Owens* a party who holds a contract containing a coordinated benefits clause is required first to utilize the health care provider for services offered by that health care provider, but is able to seek reimbursement for "allowable expenses" that were not contractually required to be provided by the health care provider. MCL 500.3105, 500.3107, 500.3109a. In other words, because the services received by plaintiff in this case were not required by contract to be provided by PHP, they were not subject to the coordination of benefits clause. As

such, the general liability provision of the act, MCL
500.3105, applies to defendant's obligation to plaintiff
under the act.[5]

Although we are somewhat sympathetic to defen-
dant's position that plaintiff never gave PHP an oppor-
tunity to complete the medical services instituted, i.e.,
physical therapy, plaintiff's actions in that regard do
not address whether defendant is liable for the ser-
vices because of a coordinated benefits clause.
Rather, whether plaintiff was reasonable in failing to
return to PHP for continued physical therapy, and
instead unilaterally engaging the services of a chiro-
practor, addresses the second statutory consideration
in determining the extent, if any, of defendant's obli-
gation: Whether plaintiff incurred an "allowable
expense" and, in particular, whether the chiropractic
services were "reasonably necessary services." MCL
500.3107(1)(a). It is plaintiff's burden to prove that
the services were reasonably necessary, *Owens,*
*supra* at 324, and that issue should be resolved by the
trier of fact[6] in light of PHP's stated desire to continue
with physical therapy if plaintiff's problems persisted.

---

[5] We reject the invitation from amicus to rely on a House Analysis of
the house bill that led to the act, and the minutes of the Committee on
Insurance from 1974, as evidence of the legislative purpose of the statute.
Such "evidence" is of no value with respect to what the Legislature, rather
than committee members or administrative staff, believed to be the pur-
pose of the proposed statute. *People v Pfaffle,* 246 Mich App 282, 301-302;
632 NW2d 162 (2001); *In re Complaint of Michigan Cable Telecommuni-
cations Ass'n,* 241 Mich App 344, 372-373; 615 NW2d 255 (2000). Instead,
we rely on the words actually utilized by the Legislature in §§ 3105, 3107,
and 3109a in coming to our conclusion. We also note that defendant has
not alleged that any provision of the act other than § 3109a applies to this
case.

[6] This statement should not be construed as foreclosing resolution of
this issue by way of a motion for summary disposition should the evi-
dence and proceedings so warrant.

As the circuit court noted, this issue was never addressed by the district court in light of its holding on the coordination issue. We believe, as did the circuit court, that this issue must be addressed in the first instance by the district court.

We affirm the circuit court's decision and remand to the district court for proceedings consistent with this opinion.