# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH PAUL DUROCHER,

        Plaintiff-Appellant,

v

WESTBORN CHRYSLER JEEP INC,

        Defendant/Cross-Defendant-
        Appellee/Cross-Appellee,

and

CHIEF FINANCIAL FEDERAL CREDIT
UNION,

        Defendant/Cross-Plaintiff-
        Appellee/Cross-Appellant,

and

CHRYSLER GROUP LLC,

        Defendant.

UNPUBLISHED
October 14, 2014

No. 316595
Wayne Circuit Court
LC No. 11-010578-NZ

---

Before: STEPHENS, P.J., and TALBOT and BECKERING, JJ.

PER CURIAM.

On appeal, Joseph Paul Durocher appeals as of right the trial court's April 15, 2013 order granting Westborn Chrysler Jeep, Inc.'s (Westborn) motion for summary disposition that dismissed all of Durocher's claims against Westborn. On cross-appeal, Chief Financial Federal Credit Union (Chief Financial) appeals as of right from the same order, which also dismissed its cross-complaint against Westborn. We affirm in part and reverse in part.

## I.     STANDARD OF REVIEW

The trial court granted Westborn's motion for summary disposition based on both MCR 2.116(C)(8) and (C)(10); however, because the court relied on evidence outside of the pleadings,

-1-

this Court will review the issues pursuant to standard for MCR 2.116(C)(10). This Court "review[s] de novo a trial court's decision on a motion for summary disposition."[1] A motion "brought under MCR 2.116(C)(10) tests the factual support for a claim."[2]

> In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties in the light most favorable to the party opposing the motion. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law.[3]

## II. DUROCHER'S CLAIMS

First, Durocher contends that the trial court erred when it granted Westborn's motion for summary disposition, which dismissed all of his claims. We agree, in part.

### A. FRAUDULENT AND INNOCENT MISREPRESENTATION

To prove fraudulent misrepresentation, a plaintiff must prove:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.[4]

" 'A claim of innocent misrepresentation [however] is shown where a party detrimentally relies on a false representation in such a manner that the injury inures to the benefit of the party making the misrepresentation.' "[5]

Durocher testified that Westborn represented that he would receive $16,513 for the Dodge, and that Westborn would pay off the balance of the loan on that vehicle. He further asserts Westborn agreed that it would absorb any negative equity from the Dodge. Durocher claims that because of the above representations, he decided to purchase the Jeep. Durocher

---

[1] *Pennington v Longabaugh*, 271 Mich App 101, 104; 719 NW2d 616 (2006).

[2] *Sprague v Farmers Ins Exch*, 251 Mich App 260, 264; 650 NW2d 374 (2002).

[3] *Id*. (citations and quotations omitted).

[4] *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012) (citation and quotations omitted).

[5] *Roberts v Saffell*, 280 Mich App 397, 404; 760 NW2d 715 (2008), aff'd 483 Mich 1089 (2009) (citation omitted).

argues that he suffered damages because if the purchase had been conducted as Westborn represented, then he would have paid less for the Jeep. Westborn claims, however, that Durocher was informed of the $7,287.53 in negative equity from the Dodge, so the negative equity was appropriately included in the price of the vehicle. Thus, there are triable issues of fact regarding whether Westborn made a false misrepresentation regarding the terms of the purchase of the Jeep, Westborn knew the statements were false, the statements were made with the intention that Durocher purchase a Jeep, and that, as a result, Westborn benefitted and Durocher suffered damage.[6]

Based on the above, whether summary disposition of the misrepresentation claims was appropriate turns on the reliance element. Contrary to Durocher's assertion, to succeed on either a fraudulent or innocent misrepresentation claim, a plaintiff's reliance must be demonstrated to be reasonable.[7] Westborn claims that Durocher's reliance on the alleged verbal statement of a salesman named "Joe" regarding the trade-in of the Dodge was unreasonable because Durocher signed both documents that disclosed the Dodge's negative equity, as well as the retail installment sales contract, which provided the total price of the Jeep including the negative equity. Durocher testified, however, that because the A Plan price of the Jeep was non-negotiable, he never specifically asked Westborn what the A Plan price was. Additionally, the record evidence demonstrates that the negative equity was not specifically disclosed on either the retail installment sales contract or the application for Michigan title and registration/statement of vehicle sale. Rather, only the total vehicle price, which included the negative equity, was noted. Moreover, Durocher's expert concluded that Durocher did not initial either the Chrysler LLC – Employee Advance (EP) Purchase/Lease Pricing & Acknowledgment Form or the Buyer's Order, purportedly acknowledging the presence of negative equity from the Dodge in the vehicle price. Westborn's expert, who was not requested to render an opinion on Durocher's purported initials on either document, does not dispute this contention. This Court has held that "[t]here can be no fraud where a person has the means to determine that a representation is not true."[8] Durocher, however, completed the purchase of the Jeep sight-unseen. Thus, he did not have the benefit of reviewing the window sticker for that specific vehicle, which contained the price of the Jeep with the options that he was requesting before the A Plan pricing was applied. Accordingly, this Court concludes that it cannot be found as a matter of law that Durocher's reliance on the alleged statements of Westborn regarding his trade-in and the purchase of the Jeep was unreasonable. Therefore, the trial court's grant of summary disposition of the fraudulent and innocent misrepresentation claims was improper.[9]

B.     VIOLATION OF THE RETAIL INSTALLMENT SALES ACT

---

[6] See *Titan Ins Co*, 491 Mich at 555; *Roberts*, 280 Mich App at 404.

[7] *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 690; 599 NW2d 546 (1999).

[8] *Nieves v Bell Indus, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994).

[9] See *Sprague*, 251 Mich App at 264.

Durocher contended below that Westborn violated the Retail Installment Sales Act[10] when it failed to disclose the negative equity from the Dodge in the retail installment sales contract as statutorily required. "The interpretation and application of a statute presents a question of law that the appellate court reviews de novo."[11] In interpreting a statute, the objective is to "discern and give effect to the intent of the Legislature" by first examining "the language of the statute itself."[12] " 'When construing statutory language, [the court] must read the statute as a whole and in its grammatical context, giving each and every word its plain and ordinary meaning unless otherwise defined.' "[13] " 'If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted.' "[14]

The Retail Installment Sales Act requires that a retail installment sales contract contain "[t]he cash sale price of the goods or services" and "[t]he amount of the buyer's down payment, identifying the amounts paid in money and allowed for goods traded in."[15] Under the version of the statute in effect at the time, the Retail Installment Sales Act provided that the " '[c]ash sale price' means the price of a good or service a retail buyer would pay if he or she paid for the good or service in cash . . . . The cash sale price may include any taxes and charges for delivery, installation, servicing, repairs, alterations, or improvements."[16]

A review of these provisions of the Retail Installment Sales Act reveals that the definition of "cash sale price" of a good (i.e. the Jeep) does not include any negative equity from a different good (i.e. the Dodge) that was traded in.[17] Rather, the Retail Installment Sales Act states that a buyer's down payment must be listed, "*identifying the amounts . . . allowed for goods traded in*."[18] Therefore, the cash sale price and the amounts "allowed for good traded in" must be listed separately in the retail installment sales contract.[19] In the instant case, Westborn included the amount allowed for the Dodge that Durocher traded in, which this Court would note was a negative amount, with the cash sale price (also referred to as the "vehicle price") of the Jeep. Therefore, Westborn violated the Retail Installment Sales Act by failing to list the cash price and the amounts allowed for the Dodge traded in separately.

---

[10] MCL 445.851 *et seq.*

[11] *Menard Inc v Dep't of Treasury*, 302 Mich App 467, 471; 838 NW2d 736 (2013).

[12] *Id.*

[13] *Id.* (citation omitted).

[14] *Id.* (citation omitted).

[15] MCL 445.853(d)(1), (2).

[16] Former MCL 445.852(j).

[17] Former MCL 445.852(j); MCL 445.853(d)(1).

[18] MCL 445.853(d)(2) (emphasis added).

[19] MCL 445.853(d)(1), (2).

Westborn argues that pursuant to the Truth in Lending Act,[20] a down payment may not be a negative number, which purportedly would prevent it from including the negative equity with the down payment. Assuming arguendo that assertion is correct, a review of the retail installment sales contract reveals that separately identifying the amount allowed for the Dodge trade-in on the retail installment sales contract would not have required Westborn to list a negative down payment. The retail installment sales contract has various categories under which to itemize the amount financed, once such category being related to the trade-in vehicle. The retail installment sales contract allows entries to be made for the "trade-in allowance," the "amount owing" on the trade-in, and the "net trade-in." The contract explains that the net trade-in is the trade-in allowance less the amount owing. Here, instead of noting that the trade-in allowance for the Dodge was less than the amount owing (resulting in the amount financed for the Jeep being more than the cash sales price), Westborn indicated that both the trade-in allowance and amount owing on the Dodge were $16,513.53.

Since the negative equity from the Dodge trade-in should have been listed separately from the vehicle price in the retail installment sales contract based on the Retail Installment Sales Act, we find that the trial court erred when it dismissed Durocher's claim that Westborn violated the Retail Installment Sales Act. Rather, summary disposition of this claim should have been granted as a matter of law in favor of Durocher.[21] A determination of damages, however, must be made by the trial court.

C.      VIOLATION OF THE MICHIGAN MOTOR VEHICLE INSTALLMENT SALES CONTRACTS ACT

Durocher argued before the trial court that the Michigan Motor Vehicle Installment Sales Contracts Act[22] was violated because he was not provided the retail installment sales contract containing the mandated cost-of-credit disclosures. "Every retail installment sale of a motor vehicle shall be evidenced by an instrument in writing signed by the retail buyer and a copy thereof shall be delivered to him by the retail seller at the time of its execution."[23] Durocher signed the retail installment sales contract on February 4, 2011, acknowledging delivery of a copy of the contract and Durocher failed to provide any evidence to the contrary. As such, summary disposition of this claim was proper.[24]

Durocher argues on appeal that the Michigan Motor Vehicle Installment Sales Contracts Act was violated because mandated disclosures regarding the negative equity were not made. However, his argument below focused on the allegation that he was not provided with the

---

[20] 15 USC 1601 *et seq.*

[21] MCR 2.116(I)(2).

[22] MCL 566.301 *et seq.*

[23] MCL 566.302.

[24] See *Sprague*, 251 Mich App at 264.

contract, and not the appropriateness of the disclosures. Because this argument was not made before the trial court, Durocher is precluded from making it now on appeal.[25]

## D.     VIOLATION OF THE TRUTH IN LENDING ACT

Durocher argued below that Westborn violated the Truth in Lending Act because without the alleged fraud of Westborn, the amount financed for the Jeep would have been below $25,000. At the time of the transaction at issue, the Truth in Lending Act provided that transactions exempted from its purview included, "[c]redit transactions . . . in which the total amount financed exceeds $25,000."[26] Here, even accepting Durocher's argument as true that the negative equity from the Dodge and finance charges should not be included in the amount financed,[27] the trial court appropriately granted summary disposition of this claim. Based on the record evidence, beginning with the A Plan price of the vehicle of $24,338, less $350 (as noted on the Chrysler LLC – Employee Advantage (EP) Purchase/Lease Pricing & Acknowledgment Form), adding sales tax (6%) of $1,439.28, deducting the manufacturer's rebate of $500, and adding the documentary preparation fee of $75, filing fees of $23, and the optional ERT fee of $24, the total amount financed for the Jeep would have been $25,049.28, in excess of $25,000. Thus, his argument must fail.

## E.     RESCISSION/REVOCATION CLAIMS

Finally, Durocher challenges the dismissal of his rescission and revocation claims based on the trial court's erroneous dismissal of his misrepresentation claims. The equitable remedy of rescission may be justified under certain circumstances in cases of innocent or fraudulent misrepresentation.[28] As a question of fact exists regarding whether innocent or fraudulent misrepresentation occurred, the trial court erred in dismissing Durocher's rescission claim.[29]

In regards to the revocation of acceptance claim, "[i]n general, under article 2 of the [Uniform Commercial Code] UCC, a buyer may (1) accept goods,[30] (2) reject goods,[31] or (3) revoke acceptance within a reasonable time if a nonconformity substantially impairs the value of the goods.[32],[33] In the instant case, Durocher accepted the vehicle on February 5, 2011.

---

[25] See *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005).

[26] Former 15 USC 1603(3).

[27] See *Sprague*, 251 Mich App at 264.

[28] *Lash v Allstate Ins Co*, 210 Mich App 98, 103; 532 NW2d 869 (1995); *Hungerman v McCord Gasket Corp*, 189 Mich App 675, 677; 473 NW2d 720 (1991).

[29] See *Sprague*, 251 Mich App at 264.

[30] MCL 440.2606; MCL 440.2607.

[31] MCL 440.2602.

[32] MCL 440.2608.

[33] *Bev Smith, Inc v Atwell*, 301 Mich App 670, 684; 836 NW2d 872 (2013) (footnotes added).

Approximately two months later he received the window sticker, which alerted him to the alleged issue regarding the purchase price of the vehicle. It is not disputed that, if true, the over-payment for the vehicle would substantially impair its value. On July 29, 2011, approximately four months after receiving the window sticker, Durocher's attorney wrote a letter to Chrysler and Westborn, attempting to revoke his acceptance of the Jeep. Considering that time is needed to retain counsel and assess the case, this Court finds that the revocation occurred within a reasonable time.[34] An issue, however, arises with Durocher's continued use of the vehicle after his attempted revocation. Durocher testified to driving the vehicle in excess of 14,000 miles between the time of the attempted revocation and his deposition. "[C]ontinued use of goods after revocation is acceptable only in exceptional circumstances, e.g., where the alternative to continued use was going out of business or where the buyer could not find another place to live and abandoned use as soon as possible."[35] Here, Durocher testified that while he used the Jeep as his everyday car since it was purchased, he had a number of vehicles. Thus, there were no exceptional circumstances in this case, and we find that summary disposition of Durocher's revocation claim was appropriate.[36]

## III. CHIEF FINANCIAL'S CLAIMS

Chief Financial asserts that the trial court erred in granting summary disposition in favor of Westborn and dismissing Chief Financial's claims. Rather, summary disposition should have been entered in favor of Chief Financial. We agree.

Chief Financial's complaint alleged error by Westborn when Westborn failed to purchase the retail installment sales contract from Chief Financial after an appropriate demand. "In interpreting a contract, our obligation is to determine the intent of the contracting parties. If the language of the contract is unambiguous, we construe and enforce the contract as written."[37]

Pursuant to the Assignment by Seller contained in the retail installment sales contract and signed by Westborn, Westborn warranted in relevant part that "[t]he sale was completed in accordance with all applicable federal and state laws and regulations." The assignment further states that:

> If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.

---

[34] Cf. *id*.

[35] *Computer Network, Inc v AM Gen Corp*, 265 Mich App 309, 323; 696 NW2d 49 (2005).

[36] See *Sprague*, 251 Mich App at 264.

[37] *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003) (citations omitted).

In the instant case, as discussed above, in completing the sale of the Jeep, Westborn violated the Retail Installment Sales Act. Additionally, we find that Westborn violated the Motor Vehicle Sales Finance Act.[38] Pursuant to the Motor Vehicle Sales Finance Act,[39] an installment sale contract must include, in pertinent part:

> (a) The cash price of the motor vehicle. This amount shall include any taxes, the cash price of agreed upon accessories and installation of the accessories, the cash price of any extended warranty or service contract, and a documentary preparation fee. . . . [and]

> (b) The down payment made by the buyer at the time of or before execution of the contract, indicating whether made in cash, represented by the agreed value of a trade-in motor vehicle or other goods, or both. The amount of cash and the value of any trade-in shall be stated separately. A description that is sufficient for identification of any trade-in shall be included.

The statute is clear that the cash price of the vehicle being purchased does not include any negative equity from a trade-in.[40] Rather, any amounts being allowed for the trade-in are separate.[41] As such, Westborn's combining the cash price with the negative equity for the Dodge constituted a violation.

Based on the above, the language of the Assignment by Seller requires that upon Chief Financial's demand, Westborn purchase the retail installment sales contract from Chief Financial and pay additional fees, in cash. On September 12, 2011, Chief Financial demanded that Westborn "buy back the contract" related to Durocher's Jeep, and Westborn has refused to do so. Accordingly, Chief Financial was entitled to relief based on the terms of the Assignment by Seller. Therefore, the trial court erred when it granted summary disposition in favor of Westborn and dismissed Chief Financial's claims, and summary disposition should have been granted in favor of Chief Financial.[42] A determination of damages, however, must be made by the trial court.

## IV.    CONCLUSION

The trial court inappropriately granted summary disposition of Durocher's claims for fraudulent and innocent misrepresentation, as well as for rescission, as there are triable issues of material fact. The trial court erred and should have granted summary disposition in Durocher's favor as a matter of law for his claim alleging a violation of the Retail Installment Sales Act. A

---

[38] MCL 492.101 *et seq.*

[39] MCL 492.113(2).

[40] MCL 492.113(2)(a).

[41] See MCL 492.113(2)(b).

[42] MCR 2.116(I)(2).

determination of damages for this claim must be made by the trial court. The trial court, however, properly dismissed Durocher's claims for alleged violations of the Michigan Motor Vehicle Installment Sales Contracts Act and the Truth in Lending Act, and for revocation of acceptance. The trial court additionally erred when it granted Westborn's motion for summary disposition regarding Chief Financial's claims and summary disposition instead should have been entered in Chief Financial's favor. A determination of damages for this claim must also be made by the trial court.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Michael J. Talbot
/s/ Jane M. Beckering