*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SCOTT FRANKLIN,

        Plaintiff-Appellant,

v

AMERICAN FAMILY CONNECT PROPERTY &
CASUALTY INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
July 25, 2024

No. 367079
Oakland Circuit Court
LC No. 2022-195522-NF

Before: MARKEY, P.J., and BORRELLO and GARRETT, JJ.

PER CURIAM.

Plaintiff, Scott Franklin, appeals by right the trial court's order granting partial summary disposition in favor of defendant, American Family Connect Property & Casualty Insurance Company (AFCPC), under MCR 2.116(C)(10), along with appealing the court's subsequent order denying his motion for relief from judgment and for reconsideration.[1] We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

The facts in this case are not in dispute; rather, it is the application of those facts to the contractual language in a no-fault insurance policy and to the law that drives the litigation. On November 22, 2014, Franklin was injured in a motor-vehicle accident. At the time of the accident, Franklin was covered by an automobile insurance policy issued by AFCPC. With respect to personal protection insurance (PIP) coverage, the policy's declarations page stated: "COORDINATED MEDICAL *." The language referred to by the asterisk provided that "[a] $500 deductible applies if no primary health . . . coverage exists." The insurance policy itself provided the following elaboration:

---

[1] The appeal is technically of a stipulated order of dismissal that was entered on surviving claims after the trial court entered the summary disposition, relief-from-judgment, and reconsideration orders.

**Coordination of Personal Injury Protection Benefits**

If Coordinated Medical or Coordinated Work Loss is shown on the Declarations, the following provisions apply:

**Priority of Benefits**

1.      The health benefits plans under which you and any relative are insured shall provide primary coverage for medical expenses incurred by you or any relative before any medical expense benefits are paid by us.

      a.      This insurance shall provide secondary coverage for medical expense benefits which remain uncovered after the health benefits plans, under which you and any relative are insured, have paid benefits towards those medical expenses.

      b.      If, after the named insured has elected the Coordinated Medical option, it is determined that you or any relative:

      1)      Did not have a health benefits plan in effect; or

      2)      Had a health benefits plan in effect but it is determined that the health benefits plan will not cover injuries sustained in an auto accident by you or any relative:

        any amount payable for medical expense benefits will be reduced by a $500 deductible.[2]

---

[2] With respect to subparagraph 1.b. above, the record also contained a copy of the insurance policy in which subparagraph 1.b. instead simply provided:

> If at the time of loss, it is determined that you or any relative did not have a health benefits plan in effect at the time the motor vehicle accident occurred, any amount payable for medical expenses benefits will be reduced by a $500 deductible.

The version of subparagraph 1.b. in the body of our opinion is contained in an amendment of the policy provisions, but there is no indication when the amendment took place. During the hearing on AFCPC's motion for summary disposition, the trial court asked AFCPC's counsel whether there was record support for its quotation of subparagraph 1.b. (as quoted in the body of our opinion) in AFCPC's reply brief because there were no supporting attachments to the brief. Counsel apologized for the error, but Franklin's attorney agreed with AFCPC that the quoted language in the reply brief, i.e., the amended version of subparagraph 1.b., was accurate, and at no time below did Franklin claim that the amended version was inapplicable, nor does he make that argument on appeal; indeed, Franklin essentially ignores the language in the policy and only cites

On the date of the accident in 2014, Franklin was covered by a medical insurance policy issued by Blue Cross & Blue Shield. In a letter dated June 25, 2019, AFCPC, having learned that Franklin lost his medical insurance, informed him as follows:

> You elected the Excess Medical [coordinated benefits] option for the Michigan Personal Injury Protection benefits. However, we have confirmed that you do not have a health insurance effective March 1, 2019. Therefore, as required by your policy, we are applying a $500 deductible toward any medical bills incurred starting on March 1, 2019.[3]

By letter dated February 6, 2020, AFCPC notified Franklin that it had opened a PIP claim for him pertaining to the loss on November 22, 2014. The letter explained, "This auto policy provides *primary* benefits. Please send us bills and supporting medical documentation for payment consideration."[4] (Emphasis added.) AFCPC then commenced paying bills incurred by Franklin for medical services and treatment associated with the injuries he sustained in the 2014 accident.

On April 19, 2022, Franklin entered Beaumont Hospital for surgery related to the motor-vehicle accident and stayed there for two days. The total charge was $91,866. Franklin also received medical treatment before and after the surgery and hospital stay attendant to the accident. AFCPC discovered that Franklin had obtained a healthcare insurance policy issued by Priority Health back on April 20, 2021.[5] Franklin, however, continued thereafter to seek PIP coverage from AFCPC for his medical expenses, treating AFCPC as the primary insurer. Moreover, there is no indication that Priority Health made any payments.[6] On August 10, 2022, Franklin filed

---

the declarations page. The amended version of the policy was eventually submitted to the trial court as an attachment to AFCPC's response to Franklin's motion for relief from judgment and for reconsideration. Accordingly, we shall construe and apply the amended version of subparagraph 1.b.

[3] The record does not provide any information regarding why Franklin was no longer covered by the medical insurance policy issued by Blue Cross & Blue Shield. We note that the 6-25-2019 letter quoted the amended version of subparagraph 1.b. found in the insurance policy clause regarding the coordination and priority of benefits.

[4] As will be further developed later in this opinion, even though the 2-6-2020 letter was sent to Franklin, his counsel claimed that he did not become aware of the letter until after the trial court granted AFCPC's motion for summary disposition.

[5] Although there was no documentation showing the date on which the Priority Health insurance plan commenced covering Franklin, the parties agreed at the hearing on AFCPC's motion for summary disposition that the start date was April 20, 2021. In his deposition, Franklin acknowledged that he purchased the Priority Health coverage and that it was operational before his surgery.

[6] The invoice or billing statement from Beaumont Hospital concerning the surgery and two-day hospital stay indicated that zero dollars in auto insurance payments were made and that Franklin received an "uninsured" discount of $69,833, leaving a total balance owed by Franklin of $22,052.

the instant action against AFCPC, alleging that AFCPC refused to pay PIP benefits owed to Franklin, that payments were overdue by more than 30 days, and that Franklin was entitled to PIP benefits, interest, and reasonable attorney fees. In March 2023, AFCPC moved for summary disposition under MCR 2.116(C)(10). AFCPC argued that it was undisputed that Franklin had healthcare insurance with Priority Health during the entire period in which Franklin had received medical care for which he now was attempting to recover PIP benefits. AFCPC contended that because Franklin's no-fault policy was coordinated in relation to medical benefits, which resulted in lower premiums, Priority Health was the primary insurer regarding the payment of benefits tied to Franklin's injuries stemming from the 2014 accident. Therefore, Franklin was not entitled to any benefits from AFCPC until the benefits available to him under the Priority Health policy were fully exhausted. AFCPC urged that it was obligated to provide full PIP benefits only during the span of time that Franklin had no medical insurance, and his claims fell outside that period.

On April 5, 2023, Franklin filed a response to the summary disposition motion. Franklin argued that once AFCPC indicated in the 6-25-2019 letter that it was applying the $500 deductible for bills incurred starting on March 1, 2019, AFCPC became the primary insurer going forward regardless of the fact that Franklin subsequently procured the Priority Health policy. Franklin also contended that he received considerable medical services after March 1, 2019, that AFCPC had paid the associated expenses without reservation, and that AFCPC manufactured its defense only after the costly surgery took place in April 2022.

On April 12, 2023, AFCPC filed a reply brief, asserting that nothing in the 6-25-2019 letter changed the PIP coverage from coordinated to uncoordinated, that the correspondence did not make AFCPC "a primary insurer beginning on March 1, 2019," and that because Franklin did not have a healthcare policy in effect on March 1, 2019, his PIP benefits were reduced by a $500 deductible. AFCPC insisted that even when Franklin lacked healthcare insurance, it did not make AFCPC the "primary" insurer; "rather, any amount . . . payable by [AFCPC] as secondary coverage would be subject to a $500 deductible." AFCPC reiterated that because Franklin was covered by the Priority Health insurance plan during the pertinent period, Franklin was required to first seek payment from Priority Health before AFCPC could become obligated to make PIP payments. AFCPC quoted the insurance policy clause regarding the coordination and priority of benefits, including the amended version of subparagraph 1.b., but AFCPC failed to attach supporting documentation.

On April 26, 2023, a hearing was conducted on AFCPC's motion for summary disposition. At the hearing, the parties agreed, as noted earlier, that Franklin obtained the Priority Health coverage on April 20, 2021, and, on questioning by the trial court given the lack of clarity in the complaint, Franklin's attorney indicated that PIP benefits were being sought for the April 2022 surgery and related hospital stay, along with charges incurred thereafter for Franklin's treatment related to the accident. Franklin expressed that it was his position that when the $500 deductible was paid, AFCPC became the permanent primary insurer with no reversion occurring when Franklin later procured the Priority Health policy. AFCPC contended that it never became the

---

Franklin claimed in his deposition that he provided Beaumont Hospital with information concerning his Priority Health insurance coverage.

-4-

primary insurer, and that during periods when Franklin lacked medical insurance, he would have to pay a $500 deductible before PIP benefits would be conferred. AFCPC also claimed that Franklin had given some providers information about his Priority Health coverage for purposes of billing, but not in relation to his April 2022 surgery and hospital stay. AFCPC accused Franklin of fraudulent concealment. The parties agreed that there was no caselaw specifically addressing a situation involving a coordinated no-fault policy where there was a healthcare policy in place when the no-fault policy was issued, the healthcare policy was lost, the no-fault policy kicked in, and then a new healthcare policy was subsequently obtained. As noted earlier, Franklin's attorney did agree during the hearing that the amended version of the coordination-and-priority-of-benefits clause was applicable. The trial court took the matter under advisement, indicating that it would issue a written opinion and order on the motion.

On May 22, 2023, the trial court issued an opinion and order granting partial summary disposition in favor of AFCPC, ruling that any of Franklin's claims for PIP benefits covering medical bills for services rendered when he had Priority Health insurance were dismissed with prejudice.[7] The trial court quoted the amended version of the pertinent language in the insurance policy. In support of its ruling, the trial court reasoned:

> The Court finds that the policy language contemplates potential multiple health plans (plural), and further that Defendant would only be liable for expenses that were incurred while there is no health plan in effect, or when it was determined by a health plan that no coverage was available.

> Accordingly, the Court finds that there is no genuine issue of material fact that at the time of the April 2022 surgery, Plaintiff was covered by a health insurer. As such Plaintiff was required to make reasonable efforts to obtain payment from his health insurer. . . . Therefer [sic], summary disposition is warranted.

On May 31, 2023, Franklin moved for relief from judgment and for reconsideration. Franklin's motion was premised on the letter dated February 6, 2020, in which AFCPC stated that its policy provided "primary benefits." Franklin indicated that he had just recently located the letter. He argued that AFCPC failed to provide the letter when it produced the no-fault claim file, thereby violating MCR 2.302(A)(2)(a)(i) (Id).[8] Franklin contended that he was entitled to relief

---

[7] The trial court framed its ruling as granting *partial* summary disposition because there existed some separate claims for attendant-care services that did not involve medical treatment and thus did not trigger application of the Priority Health policy.

[8] MCR 2.302(A) provides, in pertinent part:

> (2) In addition to the disclosures under subrule (A)(1), in a case asserting a first-party claim for benefits under the Michigan no-fault act, MCL 500.3101, *et seq.*, the following disclosures must be made without awaiting a discovery request:

> (a) A defendant from whom no-fault benefits are claimed must disclose:

from judgment on the basis of fraud, MCR 2.612(C)(1)(c), and for other reasons justifying relief, MCR 2.612(C)(1)(f). Franklin further maintained that the letter constituted a party admission. Next, he claimed that he was entitled to relief under MCR 2.119(F)(3) (motions for reconsideration) because he had demonstrated a palpable error by which the court had been misled and established that a different adjudication of the summary disposition motion would result from correction of the error. Franklin further argued that MCR 2.604(A) authorized revision of the trial court's ruling.[9] Finally, Franklin posited that the contractual provisions in the insurance policy were ambiguous and should have been construed against AFCPC and in favor of himself.

In response, AFCPC claimed that Franklin's arguments were puzzling because Franklin clearly had possession of the 2-6-2020 letter all along. Moreover, AFCPC argued that "[n]othing in the correspondence in any way reformed the subject policy to make the policy uncoordinated." AFCPC acknowledged that absent any healthcare insurance, AFCPC "would be required under the terms of the policy to pay to pay for the incurred benefits on a primary basis less a deductible." Attached to AFCPC's response was the amended version of the no-fault insurance policy with respect to the clause addressing the coordination and priority of benefits, including specifically subparagraph 1.b.

On July 10, 2023, the trial court issued a written opinion and order denying Franklin's motion for relief from judgment and for reconsideration. The trial court ruled that AFCPC did not make any fraudulent misrepresentations in the 2-6-2020 letter to Franklin. The court explained that there was no dispute that Franklin did not have healthcare insurance at the time of the letter; therefore, AFCPC effectively was the primary insurer at the time. The trial court further found that Franklin failed to demonstrate any misconduct on the part of AFCPC, considering that the 2-6-2020 letter had been addressed to Franklin and was or should have been in his possession at the time the court heard the motion for summary disposition. Accordingly, relief from judgment was not warranted under MCR 2.612(C)(1)(c) or (f).

With respect to Franklin's request for relief under MCR 2.119(F), the trial court stated and ruled:

Plaintiff asserts that the Court committed palpable error by construing an ambiguous contract provision in Defendant's favor. First, this is the first time that Plaintiff has argued that the insurance policy is ambiguous. Nonetheless, the Court disagrees. The parties have, at all times, agreed that the policy was coordinated. It appears that Plaintiff is attempting to argue, that either by temporarily losing insurance, the policy automatically converted to an uncoordinated policy or that Defendant's February letter had the effect of reforming the parties' contract into an uncoordinated policy. Plaintiff has cited no authority to support these positions. This Court has no obligation to find case law or make any arguments to support a

_____

(i) a copy of the first-party claim file and a privilege log for any redactions
. . . .

[9] An "order is subject to revision before entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties." MCR 2.604(A).

-6-

party's position. . . . The undisputed evidence before the Court is that Plaintiff maintained a coordinated insurance policy with Defendant and, at the time of the treatment in question, Plaintiff had health insurance. Accordingly, the Court did not err in granting summary disposition in Defendant's favor.

The trial court indicated that this was not a final order and did not close the case. Thereafter, the parties settled the issue regarding attendant-care services, and a stipulated order dismissing the case in full was entered on July 19, 2023. Franklin now appeals by right.

## II. ANALYSIS

### A. APPELLATE ARGUMENTS

#### 1. FRANKLIN

Franklin argues on appeal that summary disposition in favor of AFCPC was not appropriate because a genuine issue of material fact existed with respect to whether AFCPC was the primary insurer in providing medical coverage in relation to the pertinent healthcare services. Franklin's position is that his no-fault policy with AFCPC is ambiguous in regard to AFCPC's priority to pay medical benefits following the particular series of events that took place in this case. Franklin contends that given the ambiguity, the policy must be construed in favor of the insured under controlling Michigan authorities. Franklin complains that the 6-25-2019 letter did not explain what would happen were he to obtain a new healthcare insurance policy. Indeed, Franklin maintains that because he paid the $500 deductible, he had no obligation to do anything in the future as it related to his auto claim if he obtained a new healthcare policy. Franklin also notes, as he did below, that AFCPC willingly paid for numerous medical services after March 1, 2019, and that it only stopped doing so because the April 2022 surgery was so costly.

Franklin next asserts that the trial court erred by denying his motion for relief from judgment, MCR 2.612(C)(1)(c) and (f), and for reconsideration, MCR 2.119(F). Franklin essentially renews his arguments made below predicated on the 2-6-2020 letter, emphasizing that AFCPC continually argued at the summary disposition stage that it was never the primary insurer and that the policy never became uncoordinated, which was expressly belied by the letter.

#### 2. AFCPC

AFCPC argues that it is well-settled law that an insured who coordinates his or her no-fault PIP coverage with healthcare insurance resulting in a lower premium relative to the auto policy is deemed to have made the healthcare insurer the primary insurer regarding treatment for injuries arising out of a motor-vehicle accident. And only after that primary coverage is exhausted is a no-fault insured entitled to PIP payments. AFCPC emphasizes that there was no dispute that Franklin was covered by the Priority Health policy when the pertinent medical expenses were incurred. AFCPC contends that despite having the Priority Health policy, Franklin failed to submit his medical bills to Priority Health. Franklin also failed to advise AFCPC that he had obtained medical coverage under the Priority Health policy in April 2021. AFCPC further maintains that nothing in the 6-25-2019 letter changed the no-fault policy from a coordinated one to an uncoordinated policy, nor did the letter make AFCPC the primary payer.

AFCPC next argues that the language of the insurance policy regarding the coordination and priority of benefits speaks of "health benefits plans" in the plural, thereby contemplating potential multiple health plans. AFCPC further contends that "nothing in the language suggests the subject policy makes [AFCPC] the primary payor at any time *even when there is no health insurance coverage in effect*; rather, any amount . . . payable by [AFCPC] as secondary coverage would be subject to a $500 deductible." (Emphasis in original.) AFCPC asserts that Franklin was mandated by the plain and unambiguous language of the no-fault policy to submit the relevant medical bills to Priority Health before seeking payment from AFCPC.

AFCPC next addresses Franklin's arguments under MCR 2.612(C)(1)(c) and (f) (motion for relief from judgment) and MCR 2.119(F) (motion for reconsideration). In regard to setting aside the judgment on the basis of fraud as demanded by Franklin, AFCPC argues that there was no evidence that supported an intent to defraud in light of the fact that the 2-6-2020 letter was obviously in Franklin's possession. Moreover, the language in the 2-6-2020 letter had no bearing on the parties' arguments and the trial court's summary disposition ruling. The letter simply indicated that when Franklin did not have healthcare insurance to cover medical expenses, AFCPC would be required to make PIP payments. Nothing in the correspondence changed the policy to one that was uncoordinated. According to AFCPC, there was no basis whatsoever to grant relief from judgment or reconsideration. Finally, as to Franklin's contention that the insurance policy was ambiguous, AFCPC maintains that Franklin fails to identify the ambiguity and that, regardless, the coordination language was clear and unambiguous.

## B. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Champine v Dep't of Transp*, 509 Mich 447, 452; 983 NW2d 741 (2022). This Court similarly reviews de novo the proper interpretation and application of an insurance contract. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). "De novo review means that we review the legal issue independently, without required deference to the courts below." *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). This Court reviews "a trial court's decision on a motion for reconsideration for an abuse of discretion." *Frankenmuth Ins Co v Poll*, 311 Mich App 442, 445; 875 NW2d 250 (2015). We likewise review for an abuse of discretion a trial court's decision on a motion for relief from judgment. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 404; 651 NW2d 756 (2002). "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007).

## C. PRINCIPLES GOVERNING SUMMARY DISPOSITION UNDER MCR 2.116(C)(10)

In *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 506-507; 991 NW2d 230 (2022), this Court recited the principles that govern the analysis of a motion brought pursuant to MCR 2.116(C)(10):

> MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for

a party's action. "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party. Speculation is insufficient to create an issue of fact. A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. [Quotation marks, citations, and brackets omitted.]

## D.  PRINCIPLES CONCERNING THE INTERPRETATION AND APPLICATION OF INSURANCE CONTRACTS

In ascertaining the meaning of a contract such as an insurance policy, this Court gives the words used in the contract their plain and ordinary meaning as would be apparent to a reader of the instrument. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). A fundamental tenet of Michigan jurisprudence is that an unambiguous contract is not open to judicial construction and must be enforced as written, thereby respecting the freedom of individuals to arrange their affairs by contract. *Id*. at 468. In *Henderson*, 460 Mich at 354, our Supreme Court observed:

First, an insurance contract must be enforced in accordance with its terms. A court must not hold an insurance company liable for a risk that it did not assume. Second, a court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise. Thus, the terms of a contract must be enforced as written where there is no ambiguity.

While we construe the contract in favor of the insured if an ambiguity is found, this does not mean that the plain meaning of a word or phrase should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefitting an insured. The fact that a policy does not define a relevant term does

not render the policy ambiguous. Rather, reviewing courts must interpret the terms of the contract in accordance with their commonly used meanings. [Citations omitted.]

A provision of an insurance policy "is ambiguous if it irreconcilably conflicts with another provision, or when it is equally susceptible to more than a single meaning." *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005). When an insurance policy is ambiguous, a factual question is presented as to the meaning of its provisions, which requires a determination with respect to the intent of the contracting parties. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003). "Thus, the fact finder must interpret the contract's terms, in light of the apparent purpose of the contract as a whole, the rules of contract construction, and extrinsic evidence of intent and meaning." *Id.* (quotation marks and citations omitted).

## E. COORDINATION OF NO-FAULT PIP BENEFITS

In *Tousignant v Allstate Ins Co*, 444 Mich 301, 307-308; 506 NW2d 844 (1993), a case that AFCPC relies on, the Michigan Supreme Court explained:

Insureds who coordinate, and thus pay a reduced premium, . . . are deemed to have made the health insurer the "primary" insurer respecting injuries in an automobile accident. In *Federal Kemper Ins Co Inc v Health Ins Administration, Inc*, 424 Mich 537; 383 NW2d 590 (1986), this Court held that when a no-fault insured coordinates no-fault and health coverages, health insurance is the "primary" coverage, and, thus, the health insurer is primarily liable for payment of the insured's medical expense. The Court so held in the construction of § 3109a, stating that such construction was necessary to make effective the legislative purpose in enacting § 3109a of eliminating, in exchange for a reduction of the premium charged for no-fault insurance, health care coverage under a no-fault policy that is duplicative of health care coverage with a health insurer.

## F. DISCUSSION AND RESOLUTION

The crux of this case concerns whether AFCPC became the permanent priority insurer in relation to medical expenses associated with the motor-vehicle accident after Franklin lost medical coverage under the Blue Cross & Blue Shield policy and AFCPC began paying his medical bills subject to the $500 deductible, regardless of the fact that Franklin later procured a new healthcare policy from Priority Health. We agree with the trial court that the no-fault policy continued to be a coordinated policy in connection with medical benefits even though Franklin lost medical coverage from a healthcare insurance provider and subsequently found a new medical insurer. Under the language of the no-fault insurance policy issued by AFCPC, we conclude that the plain intent of the contracting parties was for AFCPC to be the secondary insurer in connection with medical costs or losses incurred when Franklin has healthcare insurance, and for AFCPC to assume the full obligation to pay PIP benefits relative to medical costs incurred when Franklin does not have healthcare insurance, subject to a $500 deductible and despite any intermittent disruptions in healthcare insurance coverage. We note that Franklin makes no effort to discuss, construe, or analyze the actual language in the no-fault policy concerning the coordination and priority of

medical benefits. Indeed, he does not even acknowledge the insurance policy's language, choosing instead to simply refer to the declarations page. See *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."). This reason alone would suffice to reject Franklin's argument that the insurance policy is ambiguous and should be construed in his favor.

The clause in the insurance policy addressing the coordination and priority of benefits does contemplate—in subparagraph 1.b.—a scenario in which "after" a named insured elected the coordination of medical benefits, it is determined that the insured "[d]id not have a health benefits plan in effect[.]" The use of the past tense "did not" suggests the absence of a healthcare insurance policy at the time the no-fault policy was executed and issued; however, when that language is considered in context with the surrounding language in the clause, it is clear that the absence of coverage under a healthcare insurance policy at *any time* results in AFCPC's being responsible for paying PIP benefits with application of a $500 deductible. The reciprocal would also be true; *any time* that Franklin has coverage under a healthcare policy, AFCPC becomes the secondary insurer. There is no language in the no-fault policy that can reasonably be construed to mean that the policy became uncoordinated and that AFCPC became permanently locked into being the primary insurer under the circumstances that evolved in this case. And, once again, Franklin fails to construct an argument on the basis of the policy's language.

With respect to the 6-25-2019 letter that AFCPC sent to Franklin, we find it was entirely consistent with AFCPC's position throughout the case and consistent with the language of the no-fault insurance policy. AFCPC informed Franklin that it had learned that he lost his healthcare insurance as of March 1, 2019, and that AFCPC would thereafter commence paying his medical bills associated with the 2014 accident, although it would be subject to the $500 deductible. With regard to the 2-6-2020 letter, Franklin seized on AFCPC's acknowledgment that the no-fault policy provided "primary" benefits. But when read in context with the surrounding circumstances and the remainder of the letter, it is clear that AFCPC was simply indicating that it was now obliged to pay the PIP medical benefits because there no longer was a healthcare insurer. AFCPC did not state that this was a permanent situation, and there was no suggestion that if Franklin once again acquired healthcare insurance, AFCPC would remain the primary insurer. We are not quite certain why AFCPC was so adamant that it never became the "primary" insurer, while at the same time effectively accepting that such was its role when Franklin lacked healthcare insurance. In our view, this was just a matter of semantics. Being a primary insurer can occur on a temporary basis. We also deem it illogical for Franklin to believe that a one-time $500 deductible payment opened AFCPC to *ongoing* primary liability with no end in sight.

Our discussion of the 2-6-2020 letter leads us to Franklin's arguments under MCR 2.119(F)(3) and MCR 2.612(C)(1)(c) and (f). MCR 2.119(F)(3) provides:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties

have been misled and show that a different disposition of the motion must result from correction of the error.

And MCR 2.612(C) provides, in relevant part,

> (1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:
>
> * * *
>
> (c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.
>
> * * *
>
> (f) Any other reason justifying relief from the operation of the judgment.

The trial court's reasoning rejecting Franklin's arguments under these court rules did not amount to an abuse of discretion. The 2-6-2020 letter formed the basis of Franklin's arguments that he was entitled to relief from judgment and an order granting reconsideration. But as discussed above, the letter was consistent with the clause in the no-fault policy regarding the coordination and priority of benefits and AFCPC's overall stance, except for the fact that AFCPC simply did not want to use the word "primary." There was no fraud, especially considering that the letter had been in Franklin's possession for about three years. Moreover, assuming that AFCPC fraudulently failed to disclose its copy of the letter in violation of MCR 2.302(A)(2)(a)(i), it would not have justified granting relief from judgment because the letter was not at odds with the language in the insurance policy. The letter had no impact on the trial court's decision to grant partial summary disposition in favor of AFCPC. Additionally, there was no other reason justifying relief from the operation of the judgment. Finally, because the letter was not relevant to and did not have a bearing on the trial court's ruling, we find that Franklin failed to demonstrate a palpable error by which the court was misled and failed to show that a different disposition would have resulted from correction of the alleged error.

## III. CONCLUSION

We hold that the trial court did not err by granting partial summary disposition in favor of AFCPC. The court's interpretation and application of the clause in the no-fault policy concerning the coordination and priority of benefits were legally sound. Furthermore, Franklin fails to adequately develop an argument to the contrary. Finally, the trial court did not abuse its discretion in denying Franklin's motion for relief from judgment and for reconsideration.

We affirm. Having fully prevailed on appeal, AFCPC may tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Stephen L. Borrello
/s/ Kristina Robinson Garrett

-12-